**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

UNITED STATES OF AMERICA *Ex rel*., Michael J. Fisher, Keith Franklin, Chezza Hartfield and Reginald McPhaul, and Michael J. Fisher, Keith Franklin, Chezza Hartfield and Reginald McPhaul, and All Individually,

Plaintiffs,

JPMORGAN CHASE BANK, N.A.,

Defendant.

**************************************

CASE NO. 4:16-CV-395

JUDGE AMOS L. MAZZANT

**MOTION FOR TRANSFER TO U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA UNDER 28 U.S.C. § 1404(a)**

**ORAL HEARING REQUESTED**

Richard A. Sayles
Texas State Bar No. 17697500
DSayles@swtriallaw.com
Darren P. Nicholson
Texas State Bar No. 24032789
DNicholson@swtriallaw.com
E. Sawyer Neely
Texas State Bar No. 24041574
Sneely@swtriallaw.com
**Sayles Werbner PC**
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Telephone: (214) 939-8700
Facsimile: (214) 939-8787

Jonathan Rosenberg
New York State Bar No. 1992890
jrosenberg@omm.com
**O'Melveny & Myers LLP**
Seven Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Elizabeth Lemond McKeen
California State Bar No. 216690
emckeen@omm.com
**O'Melveny & Myers LLP**
610 Newport Center Drive
17th Floor
Newport Beach, California 92660
Telephone: (949) 823-7150
Facsimile: (949) 823-6994

*Counsel for Defendant*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND .......... 3

A. HAMP .......... 3

B. The National Mortgage Settlement .......... 4

C. *Schneider v. J.P. Morgan Chase Bank, N.A.* .......... 5

D. The Complaint and this Litigation's Procedural History .......... 5

ARGUMENT .......... 7

I. THE SPA FORUM-SELECTION CLAUSE REQUIRES TRANSFER TO THE DISTRICT COURT FOR THE DISTRICT OF COLUMBIA .......... 8

A. The SPA Forum-Selection Clause Binds Relators .......... 8

B. The SPA Forum Selection Clause Applies By Its Terms To This FCA Action .......... 10

C. Not Only Is There No "Overwhelming Public Interest" That Would Outweigh The SPA Forum-Selection Clause, But The Public-Interest Factors In Fact Weigh Heavily In Favor Of Transfer To The District Of Columbia .......... 11

II. THE SECTION 1404(a) FACTORS INDEPENDENTLY REQUIRE TRANSFER .......... 13

CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*U.S. ex rel. Adrian v. Regents of Univ. of California*,
2002 WL 334915 (N.D. Cal. 2002), *aff'd*, 363 F.3d 398 (5th Cir. 2004)................................14

*Atlantic Marine Const. Co. v. U.S. District Court for Western District of Texas*,
134 S. Ct. 568 (2013)........................................................................................ *passim*

*In re Bank of N.Y. Mellon Corp. False Claims Act Litig.*,
851 F. Supp. 2d 1190 (N.D. Cal. 2012)....................................................................9, 10

*Bishop v. Wells Fargo & Co.*,
823 F.3d 35 (2d Cir. 2016)..........................................................................1, 2, 6, 14

*U.S. ex rel. Bukh v. Guldmann, Inc.*,
2014 WL 1647148 (N.D. Ill. 2014)..........................................................................14

*Collin Cty. v. Siemens Bus. Servs., Inc.*,
250 F. App'x 45 (5th Cir. 2007)...............................................................................10

*U.S. ex rel. Davis v. D.C.*,
793 F.3d 120 (D.C. Cir. 2015)..................................................................................13

*Digeo, Inc. v. Gemstar-TV Guide Int'l, Inc.*,
2007 WL 295539 (W.D. Wash. 2007)........................................................................14

*Farrell Lines Inc. v. Columbus Cello-Poly Corp.*,
32 F. Supp. 2d 118 (S.D.N.Y. 1997), *aff'd sub nom. Farrell Lines Inc. v. Ceres Terminals Inc.*, 161 F.3d 115 (2d Cir. 1998)..................................................9

*U.S. ex rel. Fisher v. Ocwen Loan Servicing, LLC*,
2016 WL 2992229 (E.D. Tex. 2016)...................................................................... *passim*

*U.S. ex rel. Fisher v. Ocwen Loan Servicing, LLC*,
2016 WL 3031713 (E.D. Tex. 2016)............................................................................6

*GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc.*,
198 F.R.D. 402 (S.D.N.Y. 2001)................................................................................9

*Hummingbird USA, Inc. v. Texas Guaranteed Student Loan Corp.*,
2007 WL 163111 (S.D.N.Y. 2007)............................................................................14

*IFC Credit Corp. v. Aliano Bros. Gen. Contractors*,
437 F.3d 606 (7th Cir. 2006)......................................................................................9

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Kostelac v. Allianz Glob. Corp. & Specialty AG*,
517 F. App'x 670 (11th Cir. 2013) ....................................................9

*U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*,
985 F.2d 1148 (2d Cir. 1993)....................................................9

*U.S. ex rel. LaValley v. First Nat. Bank of Boston*,
625 F. Supp. 591 (D.N.H. 1985)....................................................14

*U.S. ex rel. Ligai v. ESCO Techs., Inc.*,
611 F. App'x 219 (5th Cir. 2015) ....................................................2

*Little v. Shell Expl. & Prod. Co.*,
690 F.3d 282 (5th Cir. 2012) ....................................................9

*Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*,
297 F.3d 388 (5th Cir. 2002) ....................................................10

*Rehbein v. CitiMortgage, Inc.*,
937 F. Supp. 2d 753 (E.D. Va. 2013) ....................................................12

*Riley v. St. Luke's Episcopal Hosp.*,
252 F.3d 749 (5th Cir. 2001) ....................................................14

*U.S. ex rel. Roop v. Arkray USA, Inc.*,
2007 WL 844691 (N.D. Miss. Mar. 19, 2007) ....................................................14

*U.S. ex rel. Schneider v. J.P. Morgan Chase Bank, N.A.*,
No. 1:14-cv-01047-RMC....................................................3, 5, 13, 15

*U.S. ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*,
214 F.3d 1372 (D.C. Cir. 2000)....................................................13

*U.S. ex rel. Spicer v. Westbrook*,
751 F.3d 354 (5th Cir. 2014) ....................................................2

*U.S. ex rel St. Lacorte v. SmithKline Beecham Clinical Lab., Inc.*,
1999 WL 639683 (E.D. La. 1999) ....................................................9

*U.S. ex rel. Stephenson v. Archer Western Contractors, LLC*,
548 F. App'x 135 (5th Cir. 2013) ....................................................2

*U.S. ex rel. Steury v. Cardinal Health, Inc.*,
625 F.3d 262 (5th Cir. 2010) ....................................................2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*U.S. v. Bank of America*,
922 F. Supp. 2d 1 (D.D.C. 2013)....................12

*U.S. v. Sci. Applications Int'l Corp.*,
626 F.3d 1257 (D.C. Cir. 2010)....................13

*U.S. v. Speqtrum, Inc.*,
113 F. Supp. 3d 238 (D.D.C. 2015)....................13

*U.S. ex rel. Fisher v. Ocwen Loan Servicing, LLC*,
2016 WL 3172775 (E.D. Tex. June 7, 2016)....................15

*Universal Health Servs., Inc. v. Escobar*,
136 S. Ct. 1989 (2016)....................13

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008)....................8, 12, 13

*Wolfe v. CareFirst of Maryland, Inc.*,
2010 WL 1998290 (E.D. Tex. Apr. 27, 2010)....................10

*XADO Tech, LLC v. US Envirotech, Inc.*,
2014 WL 3882667 (N.D. Ill. Aug. 5, 2014)....................10

**STATUTES**

28 U.S.C. § 1404.................... *passim*

31 U.S.C. § 3730....................10

Defendant JPMorgan Chase Bank, N.A.[1] respectfully moves this Court under 28 U.S.C. § 1404(a) to transfer this action to the U.S. District Court for the District of Columbia.[2]

**PRELIMINARY STATEMENT**

This case belongs in the DDC because it is (i) the "sole" and "exclusive" litigation forum the United States selected in the governing SPA, (ii) the court that retains exclusive jurisdiction over issues regarding the 2012 NMS settlement directly implicated by Relators' complaint, (iii) the location of a pending HAMP and NMS-related qui tam action against Chase involving allegations similar to those made here, and (iv) more convenient than this District to Chase and likely expert witnesses, and no less convenient to Relators than the SDNY, the venue they originally chose and in which they filed *four* separate complaints. This case has only landed on this Court's docket because of Relators' unabashed forum shopping.

The current complaint alleges that Chase violated the FCA by falsely making certain HAMP-related, SPA-required representations and warranties, both in the initial SPA and annually thereafter. Relators were content for more than two years to litigate this case in the SDNY, where they first filed it in 2013. It was not until May 26, 2016, when it became apparent that the case law in this Court would be more favorable to their claims than Second Circuit law, that Relators moved to transfer from Manhattan to Sherman. The legal landscape changed in

[1] As used in this brief, (i) "FCA" refers to the False Claims Act; (ii) "Chase" refers to defendant JPMorgan Chase Bank, N.A.; (iii) "HAMP" refers to the Home Affordable Modification Program; (iv) "SPA" refers to the Servicer Participation Agreement; (v) "Amended SPA" refers to the Amended Service Participation Agreement; (vi) "NMS" refers to the National Mortgage Settlement; (vii) "DDC" refers to the U.S. District Court for the District of Columbia; and (viii) "SDNY" refers to the U.S. District Court for the Southern District of New York. All exhibits are cited as "Ex. __" and attached to the declaration of Jonathan Rosenberg ("Rosenberg Decl."), filed concurrently with this motion, except that the Third Amended Complaint (Ex. A) is cited as "Compl.," the SPA (Ex. B) is cited as "SPA," and the Amended SPA (Ex. C) is cited as "Amended SPA." All citations to "Dkt. No. __" are to the docket in this case, unless otherwise noted. All emphasis is added and all citations and quotations are omitted unless otherwise noted.

[2] Chase has not been served with a complaint or summons. By making this motion, Chase does not waive service, and reserves the right to move to dismiss the complaint on any available ground at the appropriate time.

May because (i) the Second Circuit in *Bishop v. Wells Fargo & Co.*, 823 F.3d 35 (2d Cir. 2016) affirmed dismissal of an FCA false-certification claim based on an allegedly false certification much like the HAMP legal-compliance certification at issue here, and (ii) this Court denied summary judgment to defendants in the Michael Fisher-led *Ocwen* and *Homeward* FCA actions, holding that those complaints should not be dismissed on condition-of-payment grounds, distinguishing *Bishop* and relevant Fifth Circuit precedent,[3] and further holding that the public disclosure bar did not preclude the claims.

On May 26, 2016—a mere *24 hours* after this Court's second summary judgment decision in *Ocwen* and *Homeward*—Relators filed what they represented was an "unopposed" transfer motion, but failed to note that they had never served the complaint on Chase, thus depriving Chase of the opportunity to oppose. The pretext Relators provided for transfer was that they no longer had reason to be in the SDNY following the government's decision to decline intervention two months earlier. Relators did not allege any connection to this District—they merely asserted that certain Relators live and work in the *Northern* District of Texas (which they explained is within driving distance). The Court should reject Relators' blatant forum-shopping, and transfer this case to the DDC for two principal reasons.

*First*, the SPA's DDC forum-selection clause binds Relators and determines venue for this action:

- Relators—bringing FCA claims as assignees "on behalf of the United States"—are bound by the mandatory forum-selection clause to the same extent as the United States is.

[3] *See, e.g.*, *U.S. ex rel. Ligai v. ESCO Techs., Inc.*, 611 F. App'x 219, 220 (5th Cir. 2015) (FCA false-certification claim actionable only when legal compliance is condition of payment); *U.S. ex rel. Stephenson v. Archer Western Contractors, LLC*, 548 F. App'x 135, 38 (5th Cir. 2013) (no FCA claim based on "boilerplate language stating that the company would follow the law"); *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268, 269–70 (5th Cir. 2010) (FCA false-certification claim fails when (as under the SPA) government had non-monetary options to remedy non-compliance); *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 366 (5th Cir. 2014) (same).

- The forum-selection clause's plain terms, broadly applying to "[a]ny and all disputes between the parties," encompass fraud claims like this one.

- Under the Supreme Court's decision in *Atlantic Marine Const. Co. v. U.S. District Court for Western District of Texas*, 134 S. Ct. 568 (2013), this Court must honor the forum-selection clause except in "extraordinary" cases where the public interest weighs overwhelmingly against transfer (and without regard to "private" factors related to the parties' convenience).

- Here, the public interest *itself* requires transfer to the DDC for several reasons, most notably that the DDC has *exclusive* jurisdiction over significant issues in this case—namely, the scope of the NMS release and Relators' use of NMS servicing standards to support their FCA claim.

*Second*, transfer to the DDC is required independent of the forum-selection clause because the public-interest factors overwhelmingly favor that forum, and no private factor supports venue in this District, let alone outweighs the public-interest factors:

- While courts normally give some weight to the plaintiff's choice of forum, no such weight is appropriate where, as here (i) the plaintiff is a qui tam relator suing on the United States' behalf, and (ii) the plaintiff's conduct raises suspicion of forum shopping.

- The DDC is significantly more convenient than this District for Chase, where it is already defending *U.S. ex rel. Schneider v. J.P. Morgan Chase Bank, N.A.*, which also alleges that Chase violated the FCA by falsely certifying compliance under the SPA. The DDC will also be far more convenient for expert witnesses, many of whom will likely be East Coast-based former government employees.

- Relators' appeals to their own convenience should be substantially discounted because their own actions demonstrate that the SDNY is sufficiently convenient, and the DDC should be no different.

- The DDC must in all events adjudicate the scope of the NMS release as applied to this case, as well as Relators' allegations invoking NMS servicing standards. Thus, maintaining this action in this Court would inconvenience all involved by requiring litigation of one case in two different forums.

## FACTUAL BACKGROUND

### A.  HAMP

HAMP is a voluntary program that the U.S. Treasury Department established in the wake of the 2008 financial crisis with the goal of preventing avoidable foreclosures by creating

incentives for participating loan servicers—including Chase—to modify home loans on a large scale. *See* Compl. ¶ 10. Treasury requires each participating servicer to execute an SPA with Fannie Mae, which manages HAMP's financial aspects and is designated in the SPA as the "financial agent of the United States." SPA § 4. Chase executed the SPA on July 31, 2009, and an Amended SPA on March 24, 2010. *See* Compl. ¶ 18. The SPA requires Chase (among many other things) to make at the outset, and in annual certifications thereafter, certain "representations and warranties," including that it is complying with all applicable federal and state laws and certain HAMP guidelines. SPA § 1.B. And the SPA designates the litigation forum for "[a]ny and all disputes between the parties," i.e., that they "shall be resolved solely and exclusively in the United States Federal courts located within the District of Columbia," with the parties "irrevocably waiv[ing] any" objections to venue in the DDC. SPA § 11.A.

Beginning in spring 2011, Treasury began publishing quarterly assessments in which it rated servicers' performance under HAMP. Ex. F at 1. Based on low ratings for the first three quarters of 2011, Treasury temporarily withheld Chase's HAMP servicer incentives pending improvement. Ex. G at 1, 18.

**B. The National Mortgage Settlement**

In February 2012, the Department of Justice, HUD, and 49 state attorneys general reached a $25 billion settlement agreement (known as the NMS) with the nation's five largest mortgage servicers—including Chase—to address allegations of loan-servicing deficiencies, including HAMP servicing. *See* Compl. ¶ 34 & n. 21. The government filed a complaint and the parties submitted a consent order that DDC Judge Collyer entered in April 2012. Exs. D, E. Three aspects of that consent order are particularly important here:

- The government released the servicers from civil FCA liability arising out of "Covered Servicing Conduct," including HAMP participation and implementation, occurring on or before February 8, 2012. *See* Ex. E at F-2, F-6, F-12, F-13.

- The NMS release establishes "exclusive jurisdiction and venue for any dispute arising out of matters covered by this Release is the United States District Court for the District of Columbia." Ex. E at F-42.
- Servicers' obligations under the NMS are "enforceable solely in the U.S. District Court for the District of Columbia." Ex. E at E-14–E-15.

Around the same time, Treasury paid Chase the 2011 incentives it had been withholding, explaining that it "ha[d] agreed to release all currently withheld incentives as part of the [NMS]," but "continues to retain the right to withhold incentives in future periods." Ex. H at 20.

### C. *Schneider v. J.P. Morgan Chase Bank, N.A.*

On May 6, 2013, Laurence Schneider filed an FCA case in the District of South Carolina principally alleging that Chase failed to comply with the NMS's terms. *See* Dkt. No 1, *U.S. ex rel. Schneider v. J.P. Morgan Chase Bank, N.A.*, No. 1:14-cv-01047-RMC. On May 27, 2014, Schneider filed an unopposed motion seeking transfer to DDC based on that court's exclusive jurisdiction, *see Schneider* Dkt. No. 57-1 at 3, and the case was transferred to DDC on June 19, 2014, *see Schneider* Dkt. 58. On November 17, 2014, Schneider amended the complaint to add allegations analogous to those at issue here, that Chase violated the FCA by falsely certifying HAMP compliance under the SPA. *See* Ex. I at 10–11. Chase's motion to dismiss the complaint is pending. *See Schneider* Dkt. Nos. 102, 105, 110, 112.

### D. The Complaint and this Litigation's Procedural History

This FCA suit—filed on September 30, 2013, and brought "[o]n behalf of the United States," Compl. ¶¶ 9, 152, 155, 160—alleges that from 2009 to 2014, Chase made false initial and annual certifications that it would (i) comply with all applicable laws; (ii) perform the SPA in accordance with professional standards of a well-managed operation; (iii) disclose any credible evidence of possible or actual violation of federal criminal fraud statutes or the FCA; (iv) immediately notify the government upon discovering that an SPA representation, warranty,

or covenant was not true and correct; and (v) implement an internal control program to monitor HAMP and general legal compliance. *Id*. ¶ 157. Relators allege that through these false certifications, Chase fraudulently induced the United States to enter the SPA and defrauded the United States out of HAMP incentive payments. *Id*. ¶¶ 1, 157. Relators admit that the scope of the NMS release is at issue in this case, *id*. ¶ 34, and further allege that Chase violated the NMS's foreclosure suspension and single-point-of-contact servicing standards, *id*. ¶¶ 81, 101.

Relators alleged in their initial complaint that venue in the SDNY was proper because that is where Chase is headquartered, transacts business, and engaged in FCA violations. Dkt. No. 17 ¶ 4. Relators filed an amended complaint on November 15, 2013. Dkt. No. 28. On April 2, 2014, the government declined to intervene, and the SDNY ordered the action unsealed on April 8, 2014. Dkt. No. 23. Relators then filed sealed amended complaints on September 2, 2014, and November 3, 2015. Dkt. Nos. 33, 34. On March 18, 2016, the government again declined to intervene. Dkt. No. 23. The SDNY issued an order providing that the case would be unsealed on March 22, 2016, Dkt. No. 15, but Relators have yet to serve Chase with a complaint.

On May 5, 2016, the Second Circuit held in *Bishop* that an FCA false-certification claim based on an allegedly false certification of legal compliance, much like the HAMP "all applicable laws" certification, failed as a matter of law. 823 F.3d at 44. On May 24 and 25, this Court issued three summary judgment rulings in two Fisher-led false-certification FCA cases similar to this one, denying (as relevant here) the defendants summary judgment (i) on condition-of-payment grounds, and (ii) under the public-disclosure bar.[4]

[4] *See U.S. ex rel. Fisher v. Ocwen Loan Servicing, LLC*, 2016 WL 2992229, at *6 (E.D. Tex. 2016) (denying motions for summary judgment); *U.S. ex rel. Fisher v. Ocwen Loan Servicing, LLC*, 2016 WL 3031713, at *8 (E.D. Tex. 2016) (denying defendants' public disclosure bar argument). The defendants' subsequent motions for (i) certification of interlocutory appeal and (ii) reconsideration, *see Ocwen* Dkt. Nos. 450, 458, have been stayed under the Court's June 22, 2016 order (*Ocwen* Dkt. No. 530) in light of the parties' notice of settlement in principle.

On May 26, 2016, Relators filed an ex parte "unopposed" motion to transfer venue to this Court. Dkt. No. 26. Relators asserted that they initially filed in SDNY because "of the outstanding reputation of the SDNY in financial litigation and the interest of the U.S. Attorney's Office for the [SDNY] in pursuing such cases," but the government's decision not to intervene rendered this District the most convenient forum. *Id*. ¶ 18. Relators asserted that this litigation "arise[s] from actions by Defendant that took place in *North Texas*," *id*. ¶ 25, which is "within easy driving distance" of Sherman, *id*. ¶ 7. Relators did not allege that any relevant conduct occurred in the Eastern District. Relators also argued that this Court is familiar with the relevant law because of the *Ocwen* and *Homeward* cases. *Id*. ¶ 25.

Relators failed to inform the SDNY that the SPA designates DDC as the exclusive forum for disputes between the SPA parties. Nor did they mention that the NMS vests the DDC with exclusive jurisdiction to (i) determine the scope of the NMS release, which they admit in the complaint will be at issue; and (ii) adjudicate actions enforcing NMS servicing standards, as Relators seek to do here. *Supra* at 4–5. And Relators chose not to serve Chase with the complaint or provide Chase with notice of the motion, representing to the SDNY that "defending this case in the Eastern District of Texas rather than the Southern District of New York poses no incremental cost to" Chase, and thus Chase would "not be inconvenienced by the transfer." Dkt. No. 26 ¶¶ 2, 5. The SDNY ordered transfer to this Court on June 2, 2016. Dkt. No. 16.

## ARGUMENT

Section 1404(a) governs transfer motions, and provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In the ordinary case, that provision requires a court evaluating a transfer motion to weigh "private"

factors related to "convenience of the parties" and witnesses, and "public interest" factors, *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013),[5] and "give some weight to the plaintiffs' choice of forum." *Id.* at 581 n.6. But where (as here) the parties have agreed to a valid forum-selection clause (i) "the plaintiff's choice of forum merits no weight," and (ii) the court "should not consider arguments about the parties' private interests" but rather "may consider arguments about public-interest factors only." *Id.* at 581, 582. And "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 582.

Both the SPA forum-selection clause and the 1404(a) factors require transfer to DDC.

# I. THE SPA FORUM-SELECTION CLAUSE REQUIRES TRANSFER TO THE DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

The SPA forum-selection clause mandates that "[a]ny and all disputes between the parties that cannot be settled by mutual agreement shall be resolved solely and exclusively in the United States Federal courts located within the District of Columbia," with the parties "irrevocably waiv[ing] any" objections to venue in the DDC. SPA § 11.A; Amended SPA § 11.A. That clause binds Relators, covers this action, and thus requires transfer to the DDC.

## A. The SPA Forum-Selection Clause Binds Relators

The first question is whether this dispute counts as a "dispute between the parties" under the SPA forum-selection clause. The answer is yes.

[5] The "private" factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). The "public interest" factors include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

The United States is undoubtedly bound by the forum-selection clause, which was agreed to by Chase and Fannie Mae "as financial agent of the United States." Relators filed this suit "[o]n behalf of the United States," Compl. ¶¶ 9, 152, 155, 160, and thus "stand[] in the shoes of the government, which is the real party in interest."[6] An FCA relator is an assignee of the government's claims.[7] Because Relators' claims are entirely derivative of the government's, the SPA forum-selection clause likewise binds them.[8]

That conclusion follows from the settled principle that an assignee is bound by a forum-selection clause in an assigned contract, because it "stands in the same position as its assignor had stood" and "is bound where [its] assignor would be bound."[9] The FCA's qui tam provision assigns Relators a portion of the United States' right to recovery under the FCA, *see Little*, 690 F.3d at 285, but it does not grant private relators any rights *beyond* what the United States itself possesses. Thus, FCA relators cannot possibly have any greater rights than the United States would have. If "a party could escape the effect of a forum selection clause by assigning or subrogating its rights, such a clause would serve little purpose."[10]

---

[6] *U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1154 (2d Cir. 1993); *see U.S. ex rel St. Lacorte v. SmithKline Beecham Clinical Lab., Inc.*, 1999 WL 639683, at *4 (E.D. La. 1999) (same).

[7] *See Little v. Shell Expl. & Prod. Co.*, 690 F.3d 282, 285 (5th Cir. 2012) (holding that relators have standing because "a qui tam relator is, in effect, suing as a partial assignee of the United States['s]" claim for damages).

[8] *See In re Bank of N.Y. Mellon Corp. False Claims Act Litig.*, 851 F. Supp. 2d 1190, 1203 (N.D. Cal. 2012) (forum-selection clause binds FCA relator because "relator is 'effectively assign[ed] the government's claims' and thus 'stands in the shoes of the government'").

[9] *Kostelac v. Allianz Glob. Corp. & Specialty AG*, 517 F. App'x 670, 675-76 (11th Cir. 2013); *see IFC Credit Corp. v. Aliano Bros. Gen. Contractors*, 437 F.3d 606, 611 (7th Cir. 2006) (applying forum-selection clause to assignee under federal common law); *GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc.*, 198 F.R.D. 402, 407 (S.D.N.Y. 2001) (holding, under New York law, that "an assignee cannot sue to enforce its rights under the contract without also assuming the other terms of the contract, including a forum selection clause"); *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 126–27 (S.D.N.Y. 1997), *aff'd sub nom. Farrell Lines Inc. v. Ceres Terminals Inc.*, 161 F.3d 115 (2d Cir. 1998) (same for subrogees).

[10] *Farrel Lines*, 32 F. Supp. 2d at 126.

The government's intervention right, *see* 31 U.S.C.A. § 3730(b)(2), confirms the point. If the United States were to intervene, there could be no dispute that an applicable forum-selection clause would require transfer to the appropriate forum absent extraordinary circumstances. *Atl. Marine*, 134 S. Ct. at 581. But if the forum-selection clause did not apply equally to FCA relators, then litigation could proceed in the relator's chosen forum, only to be transferred upon the government's intervention. No principle or precedent would support that absurd result.[11]

**B. The SPA Forum Selection Clause Applies By Its Terms To This FCA Action**

A forum-selection clause's scope is determined by its language,[12] and the SPA's broad language plainly encompasses this action. The clause directs that "*any and all disputes* between the parties … *shall*" be adjudicated in the DDC. "Using 'shall' and 'all disputes' in the clause indicates that the selected forum is exclusive and mandatory." *XADO Tech, LLC*, 2014 WL 3882667, at *4. It makes no difference that Relators bring fraud claims—the Fifth Circuit has made clear that even narrower forum-selection clauses, that (unlike the SPA clause) are expressly limited to disputes "related to" or "connected with" a particular contract, apply when "[t]here is no indication that [alleged] fraud . . . claims could be maintained without reference" to the contract. *Collin Cty. v. Siemens Bus. Servs., Inc.*, 250 F. App'x 45, 50 (5th Cir. 2007) (Texas law). As that Court explained in the analogous arbitration-clause context, such broad provisions "embrace[] all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*,

[11] *Cf. In re Bank of N.Y. Mellon Corp.*, 851 F. Supp. 2d at 1203 (rejecting argument in California FCA case that "because this action was commenced by relator . . . the contractual forum-selection clauses do not apply").

[12] *Wolfe v. CareFirst of Maryland, Inc.*, 2010 WL 1998290, at *3 (E.D. Tex. Apr. 27, 2010); *XADO Tech, LLC v. US Envirotech, Inc.*, 2014 WL 3882667, at *4 (N.D. Ill. Aug. 5, 2014).

297 F.3d 388, 393 (5th Cir. 2002). Here, Relators' claims have more than "a significant relationship" to the SPA—the SPA is central to those claims, which allege that:

- "Chase falsely certified *in its [SPA]* on or around July 31, 2009 . . . that it was in full compliance, at the time of its *execution of the* . . . *[SPA]* with federal and state laws, regulations, rules, [and] requirements." Compl. ¶ 157.

- "Chase made related, knowing false representations regarding the HAMP program and its compliance obligations," including (for example) that Chase maintained "a well-managed operation," and would "develop and implement an internal control program to monitor and detect loan modification fraud and monitor compliance with applicable consumer protection and fair lending laws." *Id.*; *see supra* at 5–6. These representations are "*required by Section 4 of the Financial Instrument*," Compl. ¶ 157, which the SPA incorporates by reference, SPA § 12.C.

- "By the above material false certifications and false statements, Chase fraudulently induced the United States . . . *to enter the Servicer Participation Agreements* with Chase and to purchase the related Financial Instruments." Compl. ¶ 157.

- "Chase made substantially similar false subsequent Annual Certifications to the United States annually, on or about June 1, 2010, June 1, 2011, June 1, 2012, June 1, 2013 and June 1, 2014 *in the form set forth in the Servicer Participation Agreement*, that it had [past] and would [future] comply with all relevant state and federal laws and regulations, when it knew that it had not done so." *Id.*

Indeed, the SPA itself envisions potential FCA claims. *Ocwen*, 2016 WL 2992229, at *7 ("the provision of false or misleading information to Fannie Mae or Freddie Mac in connection with [HAMP] or pursuant to the [SPA] may constitute a violation of" the FCA (quoting Financial Instrument ¶ 5(f))). There is no basis for carving out from the SPA's broad "any and all disputes between the parties" forum-selection clause a category of claims that the SPA expressly references. Relators' claims thus fall well within the SPA's forum-selection clause.

### C. Not Only Is There No "Overwhelming Public Interest" That Would Outweigh The SPA Forum-Selection Clause, But The Public-Interest Factors In Fact Weigh Heavily In Favor Of Transfer To The District Of Columbia

Because the SPA forum-selection clause applies to Relators' claims, transfer is required "in all but the most exceptional cases." *Atl. Marine*, 134 S. Ct. at 581. The court "may consider arguments about public-interest factors," but "[b]ecause those factors will rarely defeat a transfer

motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 582. Here, the public interest factors—which concern the efficient administration of the court system, *see supra* at 3—weigh overwhelmingly in *favor* of the DDC.

Most notably, the DDC has *exclusive* jurisdiction over at least two questions that will have to be adjudicated in this case. *First*, Relators admit that their complaint implicates the question whether and to what extent Relators' claims are barred by the NMS release. Compl. ¶ 34. That is because the NMS releases Chase from FCA liability for its pre-February 8, 2012 participation in the HAMP program, *supra* at 4, whereas the complaint alleges that Chase violated the FCA by making false HAMP-required representations in 2009, 2010, and 2011, Compl. ¶ 157. *Second*, Relators seek to enforce the NMS's servicing standards, contending that Chase is liable under the FCA for failing to satisfy those standards. *Id*. ¶¶ 81, 101.

These inevitable disputes can only be adjudicated in the DDC. As Judge Collyer has explained, "the Consent Judgment and Release expressly provide that this Court retains jurisdiction." *U.S. v. Bank of America*, 922 F. Supp. 2d 1, 5 (D.D.C. 2013); *see also supra* at 5. The DDC likewise has exclusive jurisdiction over claims seeking to enforce the NMS, including Relators' allegations that Chase violated its servicing standards.[13] And it follows from the DDC's exclusive jurisdiction that the § 1404(a) public interest factors overwhelmingly favor that venue. The DDC not only has "familiarity" with, but also the exclusive authority to adjudicate, "the law that will govern" a significant portion of this case. *In re Volkswagen*, 545 F.3d at 315.

Moreover, even if another public-interest factor could theoretically overcome another court's exclusive jurisdiction, none even points in the other direction here. Relators cited in their transfer motion this Court's experience with the *Ocwen* and *Homeward* cases. *See supra* at 7.

[13] *See supra* at 5; *see also Rehbein v. CitiMortgage, Inc.*, 937 F. Supp. 2d 753, 762 n.12, 764 (E.D. Va. 2013) (declining to enforce the NMS because "the Consent Judgment provides that the servicer's obligations under the Consent Judgment are only enforceable in the" DDC).

But the DDC has similar on-point experience, given the pending *U.S. ex rel. Schneider v. J.P. Morgan Chase Bank* FCA case before Judge Collyer involving allegations that Chase's HAMP certifications were false. *See supra* at 5. And the DDC has significant expertise in false-certification FCA claims more generally.[14] Indeed, the Supreme Court in *Universal Health Servs., Inc. v. Escobar*, 136 S. Ct. 1989 (2016), cited favorably the D.C. Circuit's legal analysis in such cases. *Id.* at 2001–02 (citing *U.S. v. Science Applications Int'l Corp.*, 626 F.3d 1257, 1269 (D.C. Cir. 2010)).

Finally, the SPA's forum-selection clause reflects the government's recognition, applicable across all HAMP servicers, that adjudication in the DDC of SPA-related claims best serves the public interest. The government's rationale is obvious—disputes arising from the SPA are not "localized," *In re Volkswagen*, 545 F.3d at 315, but implicate a contract with the federal government, to be performed nationwide. Designating a single court to hear all cases relating to that contract promotes efficiency and consistent enforcement of the SPA terms.

## II. THE SECTION 1404(a) FACTORS INDEPENDENTLY REQUIRE TRANSFER

Even apart from the SPA forum-selection clause, a weighing of the applicable private and public-interest factors likewise requires transfer to the DDC. Indeed, "not a single relevant factor favors the [Relators'] chosen venue." *In re Volkswagen*, 545 F.3d at 318.

To begin, Relators' choice of forum is accorded no weight, for two reasons. *First*, because "the United States, not plaintiff, is the real plaintiff in interest" in a qui tam action,

[14] *See, e.g., U.S. ex rel. Davis v. D.C.*, 793 F.3d 120, 125 (D.C. Cir. 2015) (holding that defendant in false-certification FCA case did not knowingly submit false certification); *U.S. v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1273 (D.C. Cir. 2010) (holding that jury could "reasonably believe that [federal contractor had] knowingly . . . made false statements of compliance" in violation of FCA); *U.S. ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 214 F.3d 1372, 1376 (D.C. Cir. 2000) (finding for FCA defendant because "a false certification of compliance with a statute or regulation cannot serve as the basis for a qui tam action under the FCA unless payment is conditioned on that certification," which relator failed to show); *U.S. v. Speqtrum, Inc.*, 113 F. Supp. 3d 238, 249 (D.D.C. 2015) (holding that defendant violated FCA because it knew both "(1) that it violated a contractual obligation or regulation, and (2) that its compliance with that obligation was material to the government's decision to pay").

courts "throughout the nation have held that [a qui tam relator's] choice of venue is not entitled to the same level of deference as in other actions."[15] *Second*, any plaintiff's choice of forum carries no weight when his actions "raise suspicions of forum-shopping,"[16] as is inarguably the case here. Relators first filed suit (and three amended complaints) in the SDNY, and represented to that court that they sought transfer here based on the government's election not to intervene. *See supra* at 7. That representation was pretextual because Relators did not seek to transfer after the government first declined to intervene in April 2014, or following the government's second declination decision in March 2016. Rather, Relators only moved to transfer on May 26, 2016, which was (i) the same month that the Second Circuit held that certifications of general compliance with the law (such as those at issue here) cannot support an FCA claim, *see Bishop*, 823 F.3d at 44; and (ii) *the day after* this Court held, distinguishing *Bishop*, that the *Ocwen* and *Howeward* cases could proceed to trial, *see supra* at 6. This Court should not reward Relators' conspicuous attempt to seek strategic advantage by obtaining transfer from the forum they initially chose and in which they were content to remain for two-and-a-half years.

Nor do any "private" factors point to this District or preclude transfer to the DDC. The DDC is significantly more convenient for Chase, which is headquartered in New York. *See supra* at 6. The DDC is obviously more convenient from New York than Texas—D.C. is easily and affordably accessible by air and train from New York. And Chase and the government

---

[15] *U.S. ex rel. Roop v. Arkray USA, Inc.*, 2007 WL 844691, at *2 (N.D. Miss. 2007) (citing *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 756 n. 10 (5th Cir. 2001)); *see also U.S. ex rel. Adrian v. Regents of Univ. of California*, 2002 WL 334915, at *3 (N.D. Cal. 2002), *aff'd*, 363 F.3d 398 (5th Cir. 2004) ("a plaintiff's choice of forum is not given substantial weight when the plaintiff is a qui tam relator, asserting the rights of the United States government"); *U.S. ex rel. Bukh v. Guldmann, Inc.*, 2014 WL 1647148, at *3 (N.D. Ill. 2014) (same); *U.S. ex rel. LaValley v. First Nat. Bank of Boston*, 625 F. Supp. 591, 594 (D.N.H. 1985) (relators' choice of forum "should be given relatively little weight" because they are "asserting the rights of the real party in interest, the United States Government, pursuant to the qui tam provision of the False Claims Act").

[16] *Digeo, Inc. v. Gemstar-TV Guide Int'l, Inc.*, 2007 WL 295539, at *2 (W.D. Wash. 2007); *see Hummingbird USA, Inc. v. Texas Guaranteed Student Loan Corp.*, 2007 WL 163111, at *4 (S.D.N.Y. 2007) (same).

(through another relator) are already litigating the HAMP-related *Schneider* FCA action in the DDC.  *See supra* at 5.  Relators' contention that this District is more convenient for them should be afforded little weight:  If they were genuinely concerned about convenience, they would have chosen the *Northern* District, not a Court "within driving distance."  And any convenience-based argument rings especially hollow since Relators' actions show that the SDNY—where they voluntarily filed suit and litigated for more than two years—is convenient enough.  There is no reason to believe the DDC would be any less so.  Moreover, because part of this case will have to be litigated in the DDC in all events, *see supra* at 5, this District will be inconvenient even for Relators:  absent transfer, the parties will have to litigate different aspects of the matter in two different venues.

Nor does the convenience of non-party potential witnesses warrant maintaining this action here.  For example, this case is likely to involve a number of expert witnesses, many of whom are likely to be former government employees based on the east coast, not this District.[17]

None of the private factors favors this District, and the public-interest factors point overwhelmingly to the DDC.  Thus, both the SPA and the § 1404(a) factors independently mandate transfer to the DDC.

## CONCLUSION

The Court should grant Defendant's motion to transfer this action to the District Court of the District of Columbia under 28 U.S.C. § 1404(a).

---

[17] *See, e.g., U.S. ex rel. Fisher v. Ocwen Loan Servicing, LLC*, 2016 WL 3172775, at *5 (E.D. Tex. 2016) (ordering deposition of relators' expert Victor O'Laughlen (former Vice President of Making Home Affordable-Compliance Division) in Washington, D.C., where he resides, and referencing relators' expert David Pawlowski (former Senior Director of Making Home Affordable Program), a New York resident).

Respectfully submitted this 17th day of August, 2016.

*/s/ Jonathan Rosenberg*
Jonathan Rosenberg
New York State Bar No. 1992890
jrosenberg@omm.com
**O'Melveny & Myers LLP**
Seven Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Elizabeth Lemond McKeen
California State Bar No. 216690
emckeen@omm.com
**O'Melveny & Myers LLP**
610 Newport Center Drive
17th Floor
Newport Beach, California 92660
Telephone: (949) 823-7150
Facsimile: (949) 823-6994

Richard A. Sayles
Texas State Bar No. 17697500
DSayles@swtriallaw.com
Darren P. Nicholson
Texas State Bar No. 24032789
DNicholson@swtriallaw.com
E. Sawyer Neely
Texas State Bar No. 24041574
Sneely@swtriallaw.com
**Sayles Werbner PC**
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Telephone: (214) 939-8700
Facsimile: (214) 939-8787

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served upon all counsel of record, via the Court's CM/ECF system, this 17th day of August, 2016.

*/s/ Jonathan Rosenberg*
Jonathan Rosenberg

**LOCAL RULE CV-7 CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7, I certify that I and Relators' counsel Chad Walker personally conferred on August 16 and 17, 2016, and we were unable to reach agreement on the subject of this motion.

*/s/ Jonathan Rosenberg*
Jonathan Rosenberg