# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel.<br>MICHAEL J. FISHER, KEITH FRANKLIN,<br>CHESSA HARTFIELD, and REGINALD<br>MCPHAUL<br><br>v.<br><br>JPMORGAN CHASE BANK NA | §<br>§<br>§ Civil Action No. 4:16-CV-00395-ALM<br>§ Judge Mazzant<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant JPMorgan Chase Bank, N.A.'s Motion to Transfer to U.S. District Court for the District of Columbia (Dkt. #41). The Court, having considered the relevant pleadings and oral argument of the parties, finds the motion is denied.

### I. BACKGROUND

In 2008, the United States faced a housing crisis caused, in part, by mortgage fraud and predatory lending. The crisis caused home prices to plummet and foreclosures to skyrocket, leaving homeowners with negative equity in their homes. Distressed homeowners were unable to sell or refinance their homes to meet their mortgage obligations. In response to this crisis, the government enacted the Emergency Economic Stabilization Act of 2008 ("EESA"). Fannie Mae entered a Financial Agency Agreement for a Homeownership Preservation under the EESA ("FAA") with the U.S. Department of Treasury ("Treasury"), whereby the Treasury authorized Fannie Mae to act as a financial agent of the United States for EESA programs.

The Home Affordable Modification Program ("HAMP"), administered by the Treasury Department, was a voluntary program under EESA designed to prevent avoidable foreclosures by providing homeowners with affordable mortgage loan modifications and other alternatives to

eligible buyers. HAMP's primary goal was to relieve the burden on homeowners by lowering their mortgage payments to 31% or less of their gross monthly income. Investors would receive payments and a guarantee that no modification would result in a mortgage worth less than the net present value of the property. In return, mortgage servicers, in addition to their annual servicing fees, received HAMP incentive payments to complete the modifications. Each successful modification entitled the servicer from $1,200–2,000 depending on how long the mortgage was delinquent. From the program's start in 2009 through the second quarter of 2016, HAMP generated more than 1.6 million permanent modifications.

In 2009, JPMorgan Chase Bank, N.A. ("Chase"), one of the country's largest mortgage servicers by volume, enrolled in HAMP. On July 31, 2009, Chase expressly certified its compliance with HAMP guidelines and applicable federal laws in signing the initial Servicer Participation Agreement ("SPA"). The SPA names Chase as the servicer and "Fannie Mae, solely as Financial Agent of the United States" as the administrator. The SPA also names Freddie Mac as a compliance agent. The SPA states that "[a]ny and all disputes between the parties . . . shall be resolved solely and exclusively in the United States Federal courts located within the District of Columbia. The parties signed a Financial Instrument on the same day, which details the representations, warranties, and covenants that Chase is obligated to make in connection with its participation in HAMP. The Financial Instrument was fully incorporated into the SPA. On March 24, 2010, Chase signed an Amended SPA. Chase also signed annual certifications, a prerequisite to receiving HAMP payments.

Chase expressly certified in the SPAs and annual certifications that (1) it was in compliance with the terms and guidelines of HAMP; (2) it was in compliance with all applicable laws and requirements; (3) it created and maintained an effective HAMP program and committed the

2

resources needed to employ enough trained, experienced personnel with the tools and technology necessary to provide quality service to homeowners; and (4) it had adequately documented and monitored its compliance and immediately reported to the Government any credible evidence of material violations of these certifications.

The Fifth Amended Complaint alleges Chase systematically violated HAMP guidelines and knowingly presented false or fraudulent claims in excess of $430 million. On September 27, 2013, relator Michael J. Fisher sued in the Southern District of New York on behalf of the United States (Dkt. #17). On November 3, 2015, Keith Franklin, Regginald McPhaul, and Chezza Hartfield joined Michael J. Fisher as relators ("Relators") in the third amended complaint (Dkt. #34). On May 26, 2016, Relators filed a motion to transfer venue to this Court. On June 2, 2016, the Southern District of New York transferred the case to this Court. On August 17, 2016, Chase filed this Motion to Transfer to U.S. District Court for the District of Columbia Under 28 U.S.C. 1404(a) (Dkt. #41). On September 19, 2016, Relators filed a response (Dkt. #52). On September 29, 2016, Chase filed a reply (Dkt. #55). On October 11, 2016, Relators filed a sur-reply (Dkt. #58). On October 25, 2016, the United States of America filed a statement of interest regarding the motion to transfer (Dkt. #63). On November 3, 2016, the Court issued an order granting an unopposed motion to defer ruling and allow for supplemental briefing (Dkt. #66). On January 6, 2017, Chase filed its supplemental brief (Dkt. #70). On January 17, 2017, Relators filed a response to the supplemental brief (Dkt. #72). On March 13, 2017, the Court held oral argument on the motion to transfer.

## II. LEGAL STANDARD

Defendant moves to transfer venue pursuant to 28 U.S.C. § 1404(a), which permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the

3

interest of justice . . . to any other district or division where it might have been brought.**"** 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The purpose of 28 U.S.C. § 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense…'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

The U.S. Supreme Court has held that "when the parties have agreed to a *valid* forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013) (emphasis added). The U.S. Supreme Court made clear that its "analysis pre suppose[d] a contractually valid forum-selection clause." *Id.* at 581 n.5. The inquiry into a clause's validity and scope thus precedes the question of transfer pursuant that clause. *See, e.g.*, *Indus. Print Techs. LLC v. Canon U.S.A., Inc.*, No. 2:14-CV-00019, 2014 WL 7240050, at *1–2 (E.D. Tex. Dec. 19, 2014) ("[T]he *Atlantic Marine* analysis . . . presupposes a valid contract and a dispute that unquestionably falls within the scope of that contract."); *In re Union Elec. Co.*, 787 F.3d 903, 907 (8th Cir. 2015) (citing with approval a lower court's preliminary determination of a forum selection clause's validity); *Ashmore v. Allied Energy, Inc.*, No. 8:14-CV-00227-JMC, 2015 WL 128596, at *3 (D.S.C. Jan. 9, 2015) (noting that a "[c]ourt must first determine whether the forum-selection clause is valid under federal law" (internal quotations omitted)); *Rogovsky Enter., Inc. v. Masterbrand Cabinets, Inc.*, 88 F. Supp. 3d 1034, 1042 (D. Minn. 2015) (treating a relevant forum-selection clause's validity as a threshold question on a motion to transfer). Where a court finds that the forum selection clause is not valid or that the dispute does not fall within the scope of the

contract, the typical section 1404 venue transfer analysis comes into play. *See Indus. Print Technologies*, 2015 WL 128596, at *1.

The threshold inquiry when determining transfer eligibility under section 1404(a) is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties have consented to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold inquiry is met, the Fifth Circuit has held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*. These factors are not exhaustive or exclusive, and no single factor is dispositive. *Id*.

The party seeking transfer of venue must show good cause for the transfer. *Volkswagen II*, 545 F.3d at 315. The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315. The plaintiff's choice of venue is not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Volkswagen II*, 545 F.3d at 313 & 314 n.10 ("[W]hile a plaintiff has the

5

privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id*. at 315.

### III. ANALYSIS

Chase asserts that the SPA forum-selection clause binds Relators and covers False Claims Act ("FCA") lawsuits. Chase further asserts that both the SPA's forum-selection clause and the 1404(a) factors require transfer to the U.S. District Court for the District of Columbia. Relators assert that the SPA's forum-selection clause does not apply to these parties or claims; rather, the clause only applies to contract disputes that arise under Chase and non-party Fannie Mae's agreement. Relators and the United States argue the FCA's broad venue provision controls.

#### A. *Parties to the Forum-Selection Clause*

The SPA contains a forum-selection clause, which reads,

> The Agreement shall be governed by and construed under Federal law and not the law of any state or locality, without reference to or application of the conflicts of law principles. Any and all disputes between the parties that cannot be settled by mutual agreement shall be resolved solely and exclusively in the United States Federal courts located within the District of Columbia. Both parties consent to the jurisdiction and venue of such courts and irrevocably waive any objections thereto.

(Dkt. #52, Exhibit B, ¶ 11(A)). Chase argues that this is a valid forum-selection clause and it binds all parties to this litigation to resolve "[a]ny and all disputes" in the District of Columbia. Chase contends the forum-selection clause binds the United States because Fannie Mae acted as a "financial agent of the United States" when it entered the agreement (Dkt. #52, Exhibit B). Because Relators filed suit on behalf of the United States, they "stand[] in the shoes of the government, which is the real party in interest." *U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1154 (2d Cir. 1993).

6

Relators argue that "between the parties" only includes parties to the SPA—namely Chase and Fannie Mae. Relators argue the United States is not a "party" under the SPA forum-selection clause, as further evidenced by the clause's use of "[b]oth parties" rather than more inclusive terminology. Relators contend the only parties to the SPA are Chase and Fannie Mae, and it "goes without saying that a contract cannot bind a nonparty." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 295 (2002).

Relators cite a portion of the FAA which states, "[t]he Treasury shall not be deemed a party to any arrangement or agreement the Financial Agent may enter into with another entity to perform any services under this FAA," to claim Fannie Mae cannot make the Government a party to the SPA. (Dkt. #52, Exhibit D at 1–2). However, Relators take this portion of the FAA out of context. The portion of the FAA cited appears in "Section 14. Use of contractors," where the Government makes clear that Fannie Mae cannot bind the Government to any subcontractor agreements Fannie Mae enters. This portion of the FAA is not so broad as to prohibit Fannie Mae—acting as financial agent to the United States—from utilizing its express authority to bind the United States to programs under EESA, the parent program of HAMP. Relators also rely on *Frank v. Bear Stearns & Co.* to assert that "contracts with Fannie Mae and Freddie Mac are not 'government contracts' because the United States is not a party to those contracts . . . ." 128 F.3d 919, 923–24 (5th Cir. 1997). However, in *Frank*, the United States did not direct Fannie Mae or Freddie Mac to enter into purchase and sale agreements with the defendants. *Id.* Further, there was no express agency agreement in *Frank*, whereas here the FAA permits Fannie Mae to act as the United States' financial agent in EESA programs.

Chase claims the SPA forum-selection clause binds the United States by virtue of its agency relationship with Fannie Mae. Fannie Mae, acting as financial agent of the United States,

7

had authority to bind the Government. *See Overseas Carriers, Inc. v. Team Ocean Servs.- Dallas, Inc.*, 2013 WL 76300, at *12 (S.D. Tex. Jan. 4, 2013) (quoting Restatement (Third) of Agency § 6.01) ("When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal . . . the principal and the third party are parties to the contract."). The Fifth Circuit has held that principals are bound by forum-selection clauses in contracts signed by their agents. *See Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 632 (5th Cir. 2015) (principal bound by forum-selection clause in contract signed by agent); *see also Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356 (5th Cir. 2003) (recognizing agency as a basis for binding principal nonsignatories to an arbitration agreement); *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (noting that arbitration agreements and forum selection clauses are indistinguishable for enforceability purposes). The Court agrees with Chase to the extent that Fannie Mae had the authority to negotiate a forum-selection clause for disputes arising under the SPA. The Treasury expressly authorized Fannie Mae to enter into the SPA as the United States' agent. *See* FAA (Dkt. #52, Exhibit D at 1–2) (authorizing Fannie Mae to "[d]evelop standard agreements . . . to initiate servicer participation in the program" and "secure agreement with servicers for program participation"). The Government "cannot avoid [its contractual obligations] merely by invoking a statutory civil claim." *U.S. v. Bankers Ins. Co.*, 245 F.3d 315 (4th Cir. 2001). The FAA gave Fannie Mae actual authority to bind the United States to resolve disputes arising under the SPA in a particular venue.

### *B. The Forum-Selection Clause's Applicability to FCA Claims*

The Court finds a proper principal-agent relationship between Fannie Mae and the United States, whereas Fannie Mae acts as the United States' financial agent. The FAA gave Fannie Mae express authority to enroll Chase in HAMP and bind the parties to resolving SPA disputes in the

8

District of Columbia. The Court must now determine whether the forum-selection clause in the SPA applies to FCA claims brought by the Department of Justice.

The Court finds that the SPA's forum-selection clause does not control FCA litigation. Suits to enforce the FCA may only be brought either by the Attorney General, 31 U.S.C. § 3730(a), or by a private person known as a "relator," who files suit "for the person and for the United States Government" in the name of the United States, 31 U.S.C. § 3730(b)(l). The authority to bring an FCA case rests with the Department of Justice alone; neither the Treasury nor Fannie Mae may bring such a case. *See United States ex rel. Haskins v. Omega Institute, Inc.*, 11 F. Supp. 2d 555, 561 (D.N.J. 1998) ("The exclusive authority to adjudicate FCA and fraud claims rests with the Department of Justice and the Attorney General."). If the United States intervenes in the case, the Government assumes "the primary responsibility for prosecuting the action," and the relator cannot bind the Government. 31 U.S.C. § 3730(c)(l). The relator remains a party to the suit, but the Government may settle the case over the relator's objection, 31 U.S.C. § 3730(c)(2)(B), or may seek to limit the relator's participation in the litigation. 31 U.S.C. § 3730(c)(2)(C). Chase has not provided, and the Court is unable to find, any authority suggesting the Court should allow Fannie Mae—a private company with a narrowly tailored power to act on the Government's behalf to provide administrative, record-keeping, and payment functions for HAMP—to control where the Department of Justice may pursue FCA claims.

Contract disputes under the SPA should be resolved in the District of Columbia. The FCA, however, provides the Government with a remedy distinct from the underlying contract between Chase and Fannie Mae. "The FCA is not a general 'enforcement device' for federal statutes, regulations, and contracts." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010) (citations omitted). As the Fourth Circuit held in *Wilson*, "breach of contract

9

claims are not the same as fraudulent conduct claims, and the normal run of contractual disputes are not cognizable under the False Claims Act." *United States ex rel. Wilson v. Kellogg Brown & Root*, 525 F.3d 370, 383 (4th Cir. 2008). Treating this FCA action as a "dispute" under the SPA would plainly contravene the fundamental purpose of the FCA and the well-settled distinction between breach of contract cases and FCA cases. *See United States v. Kellogg Brown & Root*, 800 F. Supp. 2d 143, 155 (D.C. Cir. 2011) (quoting *United States ex rel. Owens v. First Kuwaiti Gen. Trading & Constr. Co.*, 612 F.3d 724, 726–27 (4th Cir. 2010)) ("To blur the distinction between fraud and breach of contract, then, is to contradict the purpose of the statute. 'Allowing [the FCA] to be used in run-of-the-mill contract disagreements . . . would burden, not help, the contracting process, thereby driving up costs for the government and, by extension, the American public.'"). The SPA does not cover FCA claims because a Department of Justice-initiated FCA fraud action is not a "dispute" arising under the contractual agreement between Fannie Mae and Chase.

Deeming an FCA fraud claim a "dispute" under the SPA would improperly limit the Department of Justice's ability to exercise its prosecutorial discretion in choosing where to bring FCA cases—a matter that the FCA statute expressly codifies. *See* 31 U.S.C. 31 USC § 3732(a). The Department of Justice—not Fannie Mae or the Treasury—has the exclusive statutory authority to bring an FCA claim. Chase has not provided, and the Court is unable to locate, any case in which a court concluded that another federal agency—or private party—is authorized to control where the Department of Justice must bring an FCA suit. This does not surprise the Court. The policy considerations inherent in the structure of the FCA support that the SPA dispute resolution procedures should not control an FCA claim. The SPA's dispute resolution section is completely at odds with the procedures of the FCA. The SPA requires the parties to "use all reasonable efforts to promptly resolve the dispute by mutual agreement . . . the parties agree to take all reasonable

steps to resolve disputes internally before commencing legal proceedings." (Dkt. #52, Exhibit B ¶ 7). Conversely, the FCA requires relators to file a complaint under seal without notifying the defendant so that the Government has an opportunity to investigate the allegations. 31 U.S.C. § 3730(b). Even if the SPA covered FCA claims, the Court would be hesitant to enforce the forum-selection clause because it is incongruous with the statutory procedures for initiating an FCA action.

Chase argues that the forum-selection clause applies to FCA claims and should override the broad statutory FCA venue provision. In support, Chase offers a case in which a court held a relator to a forum-selection clause. *See In re Bank of N.Y. Mellon Corp. False Claims Act Litig.*, 851 F. Supp. 2d 1190 (N.D. Cal. 2012). But *Mellon* is not a federal FCA case; rather, it is concerned with the California False Claims Act. *Id.* at 1193. Unlike the FCA, which provides only for suits "in the name of the Government," 31 U.S.C. § 3730(b)(1), California's statute allows suits to be brought on behalf of any of the state's political subdivisions, obviating the policy and statutory-enforcement considerations explicated above. *See* Cal. Gov't Code § 12652(c)(1). Chase relies on another case in which a court held a government to a forum-selection clause in a fraud action. *See Collin Cty. v. Siemens Business Servs., Inc.*, 250 F. App'x 45, 49–50 (5th Cir. 2007). But *Collin County* involved a county government bringing a common-law fraud claim relating to a contract that it had executed itself. *Id.* These cases do not indicate that a contractual agreement should override the Government's broad sovereign authority to bring an FCA action "in any judicial district" in which Chase transacts business. 31 U.S.C. § 3732(a).

Chase relies on several cases in the arbitration context to assert that the Court should compel the Department of Justice to pursue its FCA claim in the District of Columbia. Importantly, these cases are only minimally persuasive because federal law treats arbitration clauses differently

from forum-selection clauses. While the Court recognizes that arbitration clauses are "a specialized kind of forum-selection clause," there is no statutory presumption favoring a broad interpretation of forum-selection clause coverage. *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519 (1974). Doubts as to whether a dispute falls within the scope of an arbitration are resolved in favor of arbitration pursuant to the Federal Arbitration Act. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Additionally, the cases on which Chase relies are independently distinguishable. For example, in *Bankers*, FEMA—a government agency—drafted and negotiated the arbitration clause under which it brought both fraud and breach of contract claims. *United States v. Bankers' Ins. Co.*, 245 F.3d 315, 318 (4th Cir. 2012). Here, Fannie Mae—a private company acting as the Government's agent for a limited purpose—drafted the forum-selection clause. Further, the non-binding arbitration in *Bankers* was subject to FEMA's final approval, which the court found would "not dilute in any way" the Attorney General's prosecutorial authority under the FCA. *Id.* at 324. Here, the SPA's mandatory forum-selection clause would constrain the Department of Justice's prosecutorial authority. Chase also relies on *Atlantic Marine* to argue that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atlantic Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013). But *Atlantic Marine* presumed an applicable valid forum-selection clause, involved an agreement between private parties, did not address how courts are to determine the scope of the clauses, and did involve sovereign authority. *Id.* Based on the foregoing, the Court finds the SPA's forum-selection clause inapplicable to FCA actions.

### *C. Convenience*

The Court finds a valid forum-selection clause exists between Fannie Mae and Chase, which governs the resolution of disputes under the SPA. Fannie Mae had express authority pursuant to

the FAA to enroll Chase in HAMP and bind the Government to the agreement. However, the Court finds that FCA claims are not subject to the SPA's forum-selection clause. Because the dispute does not fall within the scope of the contract, the typical section 1404 venue transfer analysis comes into play. *See Indus. Print Technologies*, 2015 WL 128596, at *1. The threshold inquiry when determining transfer eligibility under section 1404(a) is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed. The Court finds that Relators could have pursued their FCA claim in either the Eastern District of Texas or the District of Columbia because the FCA's broad venue provision deems proper "any judicial district" in which Chase transacts business. 31 U.S.C. § 3732(a).

To transfer this FCA action, Chase must show good cause for the transfer and that the transferee venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315. Convenience turns on a number of public and private interest factors, none of which can be said to be of dispositive weight. *Action Indus., Inc.* 358 F.3d at 340. The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Volkswagen II*, 545 F.3d at 315.

The first private interest factor was not argued directly by Chase, but the Court finds the factor weighs slightly against transfer because all four relators live and work in Texas and the actions that gave rise to this FCA action occurred in Texas. Chase argues generally that all private interest factors favor transfer because Chase is headquartered in New York, which is closer to the District of Columbia. But Chase has not shown that the District of Columbia is "clearly more convenient" than the Eastern District of Texas because many of the parties and witnesses live and

13

work in Texas. *See Volkswagen II*, 545 F.3d at 315. Further, the "location of documents is relatively unimportant [in a venue transfer analysis] given the norm of electronic document production." *Excellent Home Care Servs., LLC v. FGA, Inc.*, No. 13 CIV. 05390 ILG, 2014 WL 652357, at *3 (E.D.N.Y Feb. 19, 2014).

The second private interest factor, the availability of the compulsory process, is neutral. The parties did not discuss this factor, but a court may compel a person to attend a trial or hearing within the state in which the person resides, is employed, *or regularly transacts business* if the person is a party or party's officer or is commanded to attend a trial and would not incur substantial expense. Fed. R. Civ. P. 45(c)(1)(B) (emphasis added). A court also has nationwide subpoena power to order third-party witnesses to attend deposition, so long as the deposition is to take place within 100 miles of the witness's residence or regular place of business. Fed. R. Civ. P. 45(a)(2), 45(c)(1)(A). Because it appears that "all of the likely witnesses in this case are within the subpoena power of either court," this factor is neutral. *See In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).

The third private interest factor is neutral because each forum would inconvenience a number of witnesses. The Eastern District of Texas would be more convenient for some witnesses because the events leading to this action occurred in Texas, where a large number of witnesses live and work. The District of Columbia would be more convenient for other witnesses because Chase is headquartered in New York and some witnesses are employed on the east coast. While there is no doubt that witnesses from New York would be inconvenienced by having to attend trial in Sherman, the same could be said for witnesses in Texas having to attend trial in the District of Columbia. When "inconvenience would exist in either potential venue, merely shifting inconvenience from one party's witnesses to the other is insufficient to affect a transfer of venue

analysis." *Net Navigation Sys., LLC v. Extreme Networks, Inc.*, No. 4:14-CV-254, 2014 WL 5465449, at *4 (E.D. Tex. Oct. 27, 2014). Defendants bear the burden of demonstrating and identifying unwilling third-party witnesses that would benefit from the transfer. *Tex. Data Co., LLC v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 644 n.14, n.15 (E.D. Tex. 2011). Because Chase fails to carry this burden, the Court finds that this factor is neutral.

The Court finds the fourth private interest factor—while not argued by either party—weighs slightly against transfer because of this Court's familiarity with the parties and claims. *See, e.g.*, *United States v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-461, 2016 WL 2992229 (E.D. Tex. May 24, 2016). In sum, the private interest factors weigh against transfer.

The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*.

The parties did not address the first public interest factor. The most recent statistics obtained by this Court for the 12–month period ending in December 31, 2016, indicate that the median time from filing to trial in civil cases in the Eastern District of Texas was 19.4 months, as compared to 44.3 months in the District of Columbia. *See* Federal Court Management Statistics, December 2016, http://www.uscourts.gov/statistics-reports/federal-court-management-statistics-december-2016, accessed March 24, 2017. The median time from filing to disposition in the Eastern District of Texas was 7.5 months and 7.8 months in the District of Columbia. This factor weighs against transfer, as this case could be brought to trial more quickly in the Eastern District of Texas, particularly given the Court's familiarity with the claims at issue.

The second public interest factor was not argued, but weighs slightly against transfer. The events that gave rise to this FCA action occurred in Texas and the Relators and many witnesses reside here. Although the case affects the interests of citizens across the country, the citizens of Texas have a greater interest in trying this case at home. Therefore, this factor weighs slightly against transfer.

The third public interest factor weighs against transfer. Relators argue this Court's depth of case-specific familiarity weighs strongly against transfer. This Court presided over the *Ocwen* and *Homeward* cases and is familiar with the claims and issues. *See United States v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-461, 2016 WL 2992229 (E.D. Tex. May 24, 2016); *United States v. Homeward Residential, Inc.*, No. 4:12-CV-461, 2016 WL 777000 (E.D. Tex. Feb. 29, 2016). Chase contends, and the Court agrees, that the District of Columbia is familiar with FCA claims. *See, e.g.*, *U.S. ex rel. Schneider v. J.P. Morgan Chase Bank, N.A.*, No. 1:14-cv-01047, 2016 WL 7408826 (D.D.C. Dec. 22, 2016). But this factor still weighs slightly against transfer because of this Court's case-specific familiarity.

The final public interest factor is neutral. This is an FCA action arising under federal law, so there are no conflict of law issues. Chase contends that the public interest is served when one court uniformly interprets the terms of a nationwide contract. But this is an FCA fraud action, not a contract action. Having considered all the factors, the Court finds that, while venue is proper in both the Eastern District of Texas and the District of Columbia, it would more convenient to try the case in the Eastern District of Texas. Chase has failed to meet the significant burden to show good cause for the transfer as required under *Volkswagen II*. 545 F.3d at 315 (holding that "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.").

## IV. CONCLUSION

For the above stated reasons, the Court finds the SPA's forum-selection clause does not apply to FCA claims and Chase has not met its burden in showing good cause for transfer under 28 U.S.C. § 1404(a). It is therefore **ORDERED** that Defendant JPMorgan Chase Bank, N.A.'s Motion to Transfer to U.S. District Court for the District of Columbia (Dkt. #41) is hereby **DENIED.**

**SIGNED this 27th day of March, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE