# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MICHAEL J. FISHER, INDIVIDUALLY; <br> UNITED STATES OF AMERICA, EX REL; <br> KEITH FRANKLIN, CHESSA <br> HARTFIELD, REGINA MCPHAUL, <br> <br> v. <br> <br> JPMORGAN CHASE BANK N.A. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. 4:16-CV-00395 <br> JUDGE MAZZANT |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Strike Irrelevant Allegations from Plaintiffs/Relators' Complaint and for a More Definite Statement (Dkt. #96) pursuant to Rule 12(e) and Rule 12(f), respectively, of the Federal Rules of Civil Procedure. The Court, having considered the motion, the parties' briefings, and the relevant pleadings, finds that the motion should be denied.

## BACKGROUND

In 2008, the United States faced a housing crisis caused, in part, by mortgage fraud and predatory lending. The crisis caused home prices to plummet and foreclosures to skyrocket, leaving homeowners with negative equity in their homes. Distressed homeowners were unable to sell or refinance their homes to meet their mortgage obligations. In response to this crisis, the Government enacted the Emergency Economic Stabilization Act of 2008 ("EESA"). Fannie Mae entered a Financial Agency Agreement for a Homeownership Preservation under the EESA with the U.S. Department of Treasury ("Treasury"), whereby the Treasury authorized Fannie Mae to act as a financial agent of the United States for EESA programs.

The Home Affordable Modification Program ("HAMP"), administered by the Treasury Department, was a voluntary program under EESA designed to prevent avoidable foreclosures by providing homeowners with affordable mortgage loan modifications and other alternatives to eligible buyers. HAMP's primary goal was to relieve the burden on homeowners by lowering their mortgage payments to 31% or less of their gross monthly income. Investors would receive payments and a guarantee that no modification would result in a mortgage worth less than the net present value of the property. In return, mortgage servicers, in addition to their annual servicing fees, received HAMP incentive payments to complete the modifications. Each successful modification entitled the servicer from $1,200–2,000 depending on how long the mortgage was delinquent. From the program's start in 2009 through the second quarter of 2016, HAMP generated more than 1.6 million permanent modifications.

In 2009, Defendant JPMorgan Chase Bank, N.A. ("Chase"), one of the country's largest mortgage servicers by volume, enrolled in HAMP. On July 31, 2009, Chase expressly certified its compliance with HAMP guidelines and applicable federal laws in signing the initial Servicer Participation Agreement ("SPA"). The SPA names Chase as the servicer and "Fannie Mae, solely as Financial Agent of the United States" as the administrator. The SPA also names Freddie Mac as a compliance agent. The parties signed a Financial Instrument on the same day, which details the representations, warranties, and covenants that Chase is obligated to make in connection with its participation in HAMP. The Financial Instrument was fully incorporated into the SPA. On March 24, 2010, Chase signed an Amended SPA. Chase also signed annual certifications, a prerequisite to receiving HAMP payments.

Chase expressly represented in the SPAs and annual certifications that (1) it was in compliance with the terms and guidelines of HAMP; (2) it was in compliance with all applicable

laws and requirements; (3) it created and maintained an effective HAMP program and committed the resources needed to employ enough trained, experienced personnel with the tools and technology necessary to provide quality service to homeowners; and (4) it had adequately documented and monitored its compliance and immediately reported to the Government any credible evidence of material violations of these certifications.

On February 8, 2012, Chase and the Department of Justice, Department of Housing and Urban Development, and 49 state attorneys general entered into a $25 billion settlement agreement (the "National Mortgage Settlement" or "NMS") to address allegations of loan-servicing deficiencies, including HAMP violations. The Government brought suit and the parties submitted a consent order that District Court Judge for the District of Columbia Judge Rosemary M. Collyer entered in April 2012. The consent order released Chase from liability arising out of "Covered Servicing Conduct" including HAMP participation and implementation, occurring on or before February 8, 2012.

On September 27, 2013, relator Michael J. Fisher filed a complaint against Chase in the Southern District of New York on behalf of the United States alleging multiple violations of the False Claims Act, 31 U.S.C. §§ 3729–3732 ("FCA"). On November 3, 2015, Keith Franklin, Reginald McPhaul, and Chezza Hartfield joined Michael J. Fisher as relators (collectively, "Relators"). On June 2, 2016, the Southern District of New York transferred the case to this Court.

On January 1, 2017, Relators filed their operative complaint—Qui Tam Plaintiffs/Relators' Fifth Amended Complaint (Dkt. #71)—alleging that Chase systematically violated HAMP guidelines and knowingly presented false or fraudulent claims to the Government totaling more than $430 million. On May 31, 2018, Chase filed the present motion to strike certain allegations in the Relators' fifth amended complaint and for a more definite statement (Dkt. #96). First, Chase

contends that because the NMS released it from civil liability for conduct that occurred on or before February 8, 2012, the Court should strike allegations based on pre-NMS conduct, or misconduct, from the Relators' fifth amended complaint. Next, Chase requests that the Court order Relators to amend their operative complaint to allege, with particularity, the timing that each Relator observed misconduct. On July 2, 2018, Relators filed their Opposition to Defendant's Motion to Strike and for a More Definite Statement (Dkt. #97). On July 16, 2018, Chase filed its reply to Relator's response (Dkt. #98). On July 23, 2018, Relators filed their sur-reply to Chase's reply (Dkt. #99).

## LEGAL STANDARD

**Rule 12(f) Motion to Strike**

Rule 12 of the Federal Rules of Civil Procedure provides "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The Court has the authority to act on its own or pursuant to a "motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading. FED. R. CIV. P. 12(f)(1)–(2). The Fifth Circuit has stated that motions to strike are generally disfavored. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1058 (5th Cir. 1982). They are viewed with disfavor and infrequently granted, both because striking portions of pleadings is a drastic remedy and because it is often sought by a movant simply as a dilatory tactic. *See Bailey Lumber & Supply Co. v. Georgia-Pacific Corp.*, No. 1:08 CV1394, 2010 WL 1141133 at *4-*5, 2010 U.S. Dist. LEXIS 26018 at *13 (S.D. Miss. March 19, 2010) (citing *FDIC v. Niblo*, 821 F. Supp. 441 (N.D. Tex. 1993)). Although motions to strike are disfavored and infrequently granted, striking certain allegations can be appropriate when they have no possible relation to the controversy and may cause prejudice to one

of the parties.  *Jefferson Parish Consol. Garbage Dist. No. 1 v. Waste Mgmt. of La.*, No. 09–6270, 2010 WL 1731204 at *5, 2010 U.S. Dist. LEXIS 49869 at *15 (E.D. La. Apr. 28, 2010) (citing *Boreri v. Fiat S.p.A.*, 763 F.2d 17, 23 (1st Cir. 1985); *Berry v. Lee*, 428 F. Supp. 2d 546, 563 (N.D. Tex. 2006); *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 401 (E.D. Pa. 2002)).  The Court possesses considerable discretion in ruling on a motion to strike.  *Bailey*, 2010 WL 1141133 at *4–*5, 2010 U.S Dist. LEXIS 26018 at *13 (citing *Niblo*, 821 F. Supp. at 449).

**Rule 12(e) Motion for a More Definite Statement**

Rule 12(e) of the Federal Rules of Civil Procedure allows a party to move for a more definite statement of the pleadings when the pleadings are "so vague or ambiguous that the party cannot reasonably prepare a response."  FED. R. CIV. P. 12(e).  "If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement . . . before responding."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).  Motions for a more definite statement are generally disfavored because "in view of the great liberality of Federal Rule of Civil Procedure 8 . . . it is clearly the policy of the Rules that Rule 12(e) should not be used to . . . require a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss."  *Source Data Acquisition, LP v. Talbot Grp., Inc.*, 4:07-cv-294, 2008 WL 678645, at *2 (E.D. Tex. Mar. 11, 2008) (citing *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959)).

## ANALYSIS

**Motion to Strike Pre-NMS Allegations**

The gravamen of Relators' fifth amended complaint is that Chase violated the FCA by knowingly making materially false representations to the Government in its annual certifications regarding compliance with the HAMP rules and policies and relevant state and federal laws.  The

5

parties do not dispute that Chase and the Government executed the NMS, which released Chase from civil liability for certain conduct that occurred on or before February 8, 2012—including potential claims under the FCA. And, Relators concede that they do not seek recovery based on alleged conduct, misconduct, or violations that occurred on or before the effective date of the NMS. Chase therefore argues that allegations premised on or referencing pre-NMS conduct are irrelevant to the present action and should be stricken from Relators' operative complaint pursuant to Rule 12(f). Chase specifically cites and requests that the Court strikes Relators' allegations that Chase's representation in the 2009 SPA, the 2010 Amended SPA, and pre-2012 HAMP annual certifications were knowingly and materially false when made.[1]

The Court does not agree; absolution is not tantamount to irrelevance. Moreover, the standard for the propriety of a Rule 12(f) motion to strike does not hinge on a party's liability for the challenged allegations. A pleading, or specific portions therein, should only be stricken if they have no possible relation to the controversy. *See Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962). Thus, Chase has the burden to establish just that.

Although Relators have stressed that the present action does not seek to hold Chase liable for any pre-NMS violations, such an admission is not also a concession that the pre-NMS conduct, or misconduct, is irrelevant to Relators' present claims. In fact, the opposite may prove true— pre-NMS conduct may be directly relevant to the present claims' scienter requirement.

Relators maintain that Chase's false representations violated two subparagraphs of the FCA. In pertinent part, the statute provides:

  (a) Liability for certain acts.—
     (1) In general. . . . [A]ny person who—
         (A) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

---

[1] Chase provides an exhaustive list of the allegations that it requests be stricken from the fifth amended complaint. *See* (Dkt. #96, p. 21–28).

> (B)Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> . . . .
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1)(A)–(B).

Both subparagraphs burden Relators with proving that Chase's conduct was done *knowingly*. *Id*. Knowingly requires that Chase had actual knowledge of the falsity of the information furnished to the Government, acted in deliberate ignorance of the truth or falsity of the information, or acted in reckless disregard of the truth or falsity of the information. *See U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 364 (5th Cir. 2014); *see also* 31 U.S.C. § 3729(b)(1)(A). It has long been recognized that evidence of prior conduct, or misconduct, even if not actionable, can be admissible to show intent or knowledge. *See* FED. R. EVID. 404(b). Relators allege that Chase's pre-NMS misconduct continued after the liability cutoff date and was thus done knowingly. At the pleading stage, the Court must accept Relators allegations as true. *See Kaiser Aluminum*, 677 F.2d 1047. Matters that are likely relevant and admissible for purposes of trial, undoubtedly have *some* relation to the controversy under Rule 12(f). Notwithstanding these rudimentary principles of evidence, Chase does satisfy its burden of showing that pre-NMS conduct has no possible relation to the controversy by simply arguing that it cannot be held liable for such conduct. Especially considering the nature of Relators' claims. The Court cannot, in good conscious, direct Relators to remove allegations that, though the parties agree Chase cannot be held liable for, may nevertheless be relevant as a backdrop in establishing an essential element of Relators' present, actionable claims. Such an order would be improper, highly prejudicial, and contrary to the spirit and letter of Rule 12(f).

**Motion for a More Definite Statement**

Chase next contends that Relators fail to provide adequate information about the facts supporting their claims of fraud. Specifically, Chase avers that the fifth amended complaint contains numerous allegations that do not specify whether Realtors observed Chase engaging in practices that violated the HAMP guidelines (including double capitalization of unpaid principal, double charging anticipated escrow payments, and dual tracking) before or after the NMS's liability cutoff date.[2] Chase requests that the Court order Relators to provide a more definite statement that describes when each Relator observed each violation.

A motion for a more definite statement should be granted if the pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." *See* FED. R. CIV. P. Rule 12(e). Rule 12(e) is used "as a mechanism to enforce the minimum requirements of notice pleading." *Hoffman v. Cemex, Inc.*, No. H-09-2144, 2009 WL 4825224, at *3 (S.D. Tex. Dec. 8, 2009) (citing *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 972 (N.D. Tex. 2006)); *see also Source Data Acquisition*, 2008 WL 678645, at *2 (citing *Mitchell*, 269 F.2d at 132).

Considering that the FCA is a statute premised on fraud, Chase's petition for a more definite statement poses a unique question about the interplay between Rule 12(e), Rule 9(b), and Rule (8). That is, whether a standalone Rule 12(e) motion for a more definite statement that is premised on the pleader's failure to comply with the particularity requirement of Rule 9b requires the Court to analyze the challenged pleading under a heightened standard. Courts have taken opposing views on this question.[3] This instant case, however, does not present such complexity

---

[2] Chase provides an exhaustive list of the allegations that it contends require a more definite statement. *See* (Dkt. #96, p. 21–28).

[3] Some courts have adopted a narrow view of Rule 12(e) and strictly applied the *vague and ambiguous* language irrespective of whether the challenged pleading is subject to Rule 9(b)'s heightened pleading standard. *See McQueen v. Woodstream Corp.*, 244 F.R.D. 26 (D.D.C. 2007) Others have taken a broader approach and used a motion for a more definite statement as an enforcement tool for Rule 9(b)'s particularity requirements and therefore granting a

because the fifth amended complaint would survive a sufficiency challenge brought under Rule 9(b), Rule 8, or Rule 12(e) and provides considerably more than enough information to inform Chase of the claims against. The Court will analyze the fifth amended complaint under the most stringent Rule 9(b) standard to demonstrate that the pleading also satisfies each of the less demanding.

The Fifth Circuit has held that a pleading that alleges violations of the FCA can survive a Rule 9(b) challenge if it sufficiently pleads "who, what, when, where, and how" with respect to the alleged false representations. *See United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 371 (5th Cir. 2017); *U.S. ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204 (E.D. Tex. 1998); *see also Williams v. WMX Technologies, Inc.*, 112 F.3d 175 (5th Cir. 1997) ("As the Second Circuit has noted, articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.") (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Here, the "who" is straightforward—Chase. The "what" is that Chase made false representations to the Government, which caused the Government to make incentive payments under HAMP. The "when" is annually beginning after February 8, 2012. The annual certifications submitted by Chase are "where" the false representations took place.

"How" the representations were false is the focus of Chase's objections. The fifth amended complaint alleges that Chase annually certified that it would continue to comply with the guidelines of the HAMP program and other relevant laws, create and maintain a professional, effective modification program, and report any credible evidence of material violations of those

---

motion for a more definite statement even if the challenged pleading is not so vague and ambiguous that a response cannot be reasonably prepared. *See Williamson v. Rexam Beverage Can Co.*, 497 F.Supp.2d 900 (S.D. Ohio 2007).

promises to the Government. Relators allege that Chase, among other things, engaged in three business practices that violated theses certifications. First, Chase artificially inflated homeowners' unpaid principal balances making them owe more than they should—double capitalization of unpaid principal. Second, Chase artificially increased homeowners' unpaid principal balances by charging homeowners for anticipated shortfalls in payments due at the end of the year—double charging anticipated escrow accounts. Third, Chase put loans through the foreclosure process at the same time Chase pursued HAMP modifications—dual tracking. Relators contend that Chase knew that these were contrary to the purpose of HAMP and the guidelines set therein but nevertheless continued to engage in the practices after the NMS.

The fifth amended complaint further alleges that in certain circumstances, Relators had first-hand knowledge that Chase engaged in these three practices and other processes that were contrary to HAMP. For example, Relators allege that "[b]eginning in 2010 or 2011, to save money, Chase offshored a portion of its SPOC team to Manila, Philippines, and gave untrained foreign staff members a script to use when talking to homeowners. When homeowners raised issues not covered by the script (as happened often, given the complexity of modification issues that can arise), the foreign staff members were unable to help." *See* (Dkt. #96, p. 26). Chase argues that this allegation, along with many others, fail to sufficiently detail when the misconduct took place. Again, the Court does not agree. Throughout the fifth amended complaint, Relators echo that the misconduct was done systematically and continuously, which rendered the representations made in each annual certification false. Thus, Chase is well-informed of the time frame in which Relators allege that Chase engaged in practices that were contrary to HAMP.

The Court is not suggesting that it is improper for Chase to request additional information about when Relators *personally* observed Chase engaging in misconduct—only that a motion for

a more definite statement under Rule 12(e) is not the proper vehicle. Here, the alleged misconduct or bad practices (*i.e.* double capitalization of unpaid principal, double charging anticipated escrow payments, and dual tracking, and others) do not necessarily violate the FCA. It is the certifications of compliance that were submitted annually which trigger potential liability. Chase is fully apprised of nature of the claims against it and how Relators allege that Chase violated the FCA. More specific details about the intricacies of the misconduct, or conduct contrary to the HAMP guidelines, that the Relators observed and when should be obtained through discovery. *See Valdez v. Celerity Logistics, Inc.*, 999 F.Supp.2d 936, 946-947 (N.D. Tex. 2014); *Hoffman v. Cemex, Inc.*, No. H-09-2144, 2009 WL 4825224, at *3 (S.D. Tex. Dec. 8, 2009) ("When a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede his ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted.") (citing *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 972 (N.D. Tex. 2006)).

## CONCLUSION

Resting primarily on the argument that it was released from liability for any pre-NMS violations, Chase fails to satisfy its burden of showing that pre-NMS conduct has no relation to the controversy. Relators allege that Chase violated the FCA by continuing to engage in pre-NMS practices that were contrary to HAMP guidelines, post-NMS. Therefore, allegations concerning pre-NMS conduct unquestionably have some relation to the present action and striking such them under Rule 12(f) is not warranted.

Further, in light of the fifth amended complaint's detailed allegations of FCA violations coupled with Relators' admission that they are not seeking to hold Chase liable for pre-NMS conduct, the Court cannot find that the fifth amended complaint is so vague and ambiguous that it

prohibits Chase from reasonably preparing a response. Relators have identified the HAMP regulations to which Chase annually certified compliance and sufficiently pleaded the who, what, when, where, and how with respect to its claims of false representation. A more definite statement pursuant to Rule 12(e) is also unprovoked.

Accordingly, for the reasons set out about, it is **ORDERED** that Chase's Motion to Strike Irrelevant Allegations from the Complaint and for a More Definite Statement (Dkt. #96) is **DENIED**.

**SIGNED this 30th day of October, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE