# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, | § | |
| MICHAEL J. FISHER, KEITH | § | |
| FRANKLIN, CHEZZA HARTFIELD, and | § | |
| REGINA MCPHAUL | § | |
| | § | Civil Action No. 4:16-CV-00395 |
| v. | § | Judge Mazzant |
| | § | |
| JPMORGAN CHASE BANK N.A. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant JP Morgan Chase Bank N.A.'s Motion for Summary Judgment Under the Public Disclosure Bar (Dkt. #106). Having considered the motion and the relevant pleadings, the Court finds that the motion should be denied.

### BACKGROUND

In 2008, the United States faced a housing crisis caused, in part, by mortgage fraud and predatory lending. The crisis caused home prices to plummet and foreclosures to skyrocket, leaving homeowners with negative equity in their homes. Distressed homeowners were unable to sell or refinance their homes to meet their mortgage obligations. In response to this crisis, the Government enacted the Emergency Economic Stabilization Act of 2008 ("EESA"). Fannie Mae entered a Financial Agency Agreement for a Homeownership Preservation under the EESA with the U.S. Department of Treasury ("Treasury"), whereby the Treasury authorized Fannie Mae to act as a financial agent of the United States for EESA programs.

The Home Affordable Modification Program ("HAMP"), administered by the Treasury Department, was a voluntary program under EESA designed to prevent avoidable foreclosures by providing homeowners with affordable mortgage-loan modifications and other alternatives to

eligible buyers. HAMP's primary goal was to relieve the burden on homeowners by lowering their mortgage payments to 31% or less of their gross monthly income. Investors would receive payments and a guarantee that no modification would result in a mortgage worth less than the net-present value of the property. In return, mortgage servicers, in addition to their annual servicing fees, received HAMP incentive payments to complete the modifications. Each successful modification entitled the servicer from $1,200–2,000 depending on how long the mortgage was delinquent. From the program's start in 2009 through the second quarter of 2016, HAMP generated more than 1.6 million permanent modifications.

In 2009, Defendant—one of the country's largest mortgage servicers by volume—enrolled in HAMP. On July 31, 2009, Defendant expressly certified its compliance with HAMP guidelines and applicable federal laws in signing the initial Servicer Participation Agreement ("SPA"). The SPA names Defendant as the servicer and "Fannie Mae, solely as Financial Agent of the United States," as the administrator. The SPA also names Freddie Mac as a compliance agent. The parties signed a Financial Instrument on the same day, which details the representations, warranties, and covenants that Defendant is obligated to make in connection with its participation in HAMP. The Financial Instrument was fully incorporated into the SPA. On March 24, 2010, Defendant signed an Amended SPA. Defendant also signed annual certifications, a prerequisite to receiving HAMP payments.

Defendant expressly represented in the SPAs and annual certifications that: (1) it was in compliance with the terms and guidelines of HAMP; (2) it was in compliance with all applicable laws and requirements; (3) it created and maintained an effective HAMP program and committed the resources needed to employ enough trained, experienced personnel with the tools and technology necessary to provide quality service to homeowners; and (4) it had adequately

2

documented and monitored its compliance and immediately reported to the Government any credible evidence of material violations of these certifications.

On February 8, 2012, Defendant and the Department of Justice, Department of Housing and Urban Development, and 49 state attorneys general entered into a $25 billion settlement agreement to address allegations of loan-servicing deficiencies, including HAMP violations. The Government brought suit, and the parties submitted a consent order that United States District Judge Rosemary M. Collyer of the United States District Court for the District of Columbia entered in April 2012. The consent order released Defendant from liability arising out of "Covered Servicing Conduct," including HAMP participation and implementation, occurring on or before February 8, 2012.

On September 27, 2013, relator Michael J. Fisher filed a complaint against Defendant in the Southern District of New York on behalf of the United States, alleging multiple violations of the False Claims Act, 31 U.S.C. §§ 3729–3732 ("FCA"). On November 3, 2015, Keith Franklin, Reginald McPhaul, and Chezza Hartfield joined Michael J. Fisher as relators (collectively, "Relators"). On June 2, 2016, the Southern District of New York transferred the case to this Court.

On January 30, 2019, Relators filed their operative complaint—*Qui Tam* Plaintiffs/Relators' Sixth Amended Complaint (Dkt. #115)—alleging that after February 8, 2012, Defendant systematically violated HAMP guidelines and knowingly presented false or fraudulent claims to the Government in order to obtain more than $430 million in HAMP payments. On December 13, 2018, Defendant filed its Motion for Summary Judgment Under the Public Disclosure Bar (Dkt. #106). Relators filed a response in opposition to Defendant's motion on February 6, 2019 (Dkt. #117). Defendant filed a reply in support of the motion on February 22, 2019, and Relators filed a sur-reply to the motion on March 8, 2019 (Dkt. #122; Dkt. #126).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the Court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial."

*Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Relators bring this *qui tam* action pursuant to the False Claims Act. 31 U.S.C. § 3729(a)(1)(A)–(B). Defendant moves the Court to enter summary judgment against Relators under the FCA's public-disclosure bar. The public-disclosure bar "applies 'whenever *qui tam* relators bring a suit based on publically available information.'" *United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 373 (5th Cir. 2017) (quoting *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 327 (5th Cir. 2011)). There is an exception to the public-disclosure bar if the relator is the original source of the information. *Id.* (citing 31 U.S.C. § 3730(e)(4)(A)).[1] The Fifth Circuit has explained the purpose of the public-disclosure bar and the original-source exception:

---

1. In full, § 3730(e)(4)(A) provides:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed: (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

5

> Together, the public disclosure bar and its original source exception calibrate the incentives for individuals to bring *qui tam* suits under the False Claims Act. When the facts showing fraud are veiled, relators who discover them should receive a reward for bringing claims. Even when the facts are publicly disclosed, a relator who is an original source may still bring something of value to the table and thus deserves to benefit. In other cases, the government—for whom the public disclosure bar is not an impediment to suit—either has notice of the wrongdoing or gains nothing from a relator with indirect knowledge of the same facts. Allowing private individuals to sue in those situations would provide an unnecessary windfall.

*Id.* (citing *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 376 (5th Cir. 2009); *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649–51 (D.C. Cir. 1994)).

Courts in the Fifth Circuit ask three questions to determine whether the public-disclosure bar applies: "(1) whether there has been a 'public disclosure' of allegations or transactions, (2) whether the *qui tam* action is 'based upon' such publicly disclosed allegations, and (3) if so, whether the relator is the 'original source' of the information." *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004) (quotation omitted). The Court is not required to rigidly follow the three steps. *Jamison*, 649 F.3d at 327 ("[C]ombining the first two steps can be useful, because it allows the scope of the relators' action in step two to define the 'allegations or transactions' that must be publicly disclosed in step one."); *see United States ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008). When determining if an action is barred by the public-disclosure provision, the defendant bears the burden to point to documents or transactions on which the relator's complaint is based. *See id.* "[O]nce the opposing party has identified public documents that could plausibly contain allegations or transactions upon which the relator's action is based, the relator bears the burden of demonstrating that they do not." *Id.*

Defendant argues that the public-disclosure bar applies because: (1) the allegations in the complaint are based on public disclosures; and (2) none of the relators are original sources (Dkt. #106). Relators disagree with Defendant on both points (Dkt. #117). Because the Court finds that all Relators are original sources, the Court need only address Defendant's second argument.[2]

## I. All Relators Are Original Sources

All Relators fall under the original-source exception to the public-disclosure bar for their separate allegations of fraud against Defendant. "Original source" is defined by statute:

> For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e)(4)(B). "To be an original source, a person must have direct and independent knowledge of the information on which the allegations are based." *Colquitt*, 858 F.3d at 374 (citing *Little v. Shell Expl. & Prod. Co.*, 690 F.3d 282, 292 (5th Cir. 2012)). "If someone relies upon the public disclosures at issue, then his or her knowledge is not independent." *Id.* (citing *Fried*, 527 F.3d at 442–43).

Defendant contends Relators are not original sources. Specifically, Defendant maintains that Relators Franklin, Hartfield, and McPhaul cannot be original sources because they did not disclose their information to the Government "before filing an action," which Defendant interprets to mean the filing of the original complaint (Dkt. #106 at pp. 28–30). Defendant claims Relator Fisher is not an original source because he does not possess independent information that

---

2. The Court recently held that the allegations in a similar complaint involving Relator Fisher were based on public disclosures. *See U.S. Ex rel. Fisher v. Ocwen Loan Servicing*, LLC, 4:12-CV-461, 2016 WL 3031713, at *6 (E.D. Tex. May 25, 2016).

7

materially adds to the public disclosures (Dkt. #106 at pp. 30–34). The Court addresses and rejects the Defendant's arguments in turn.

### A. Relators Franklin, Hartfield, and McPhaul Are Original Sources

Relators Franklin, Hartfield, and McPhaul did not initially join Relator Fisher in filing this *qui tam* suit. Relator Fisher added Relator Franklin in the Second Amended Complaint and added Relators Hartfield and McPhaul in the Third Amended Complaint. Focusing on the "before filing an action" language of § 3730(e)(4)(B), Defendant contends that Relators Franklin, Hartfield, and McPhaul cannot be original sources as a matter of law because they did not disclose their information to the Government before Relator Fisher filed the original complaint (Dkt. #106 at pp. 28–30).[3] Alternatively, Defendant argues that Relators Franklin, Hartfield, and McPhaul's failure to add any new claims to the *qui tam* suit precludes them from being original sources (Dkt. #122 at p. 8).

The Court finds that Relators Franklin, Hartfield, and McPhaul are original sources because: (1) as a matter of law, a relator who provided information to the Government concerning new claims of fraudulent conduct before filing an amended complaint qualifies as an original source;[4] and (2) Relators Franklin, Hartfield, and McPhaul alleged new, discrete claims of fraudulent conduct against Defendant.

---

3. Defendant also states that Relators Hartfield and McPhaul never filed disclosure statements with the Government before joining the suit (Dkt. #106 at p. 30). However, before joining the suit, Relators Hartfield and McPhaul filed disclosure statements with the Government, and the Government interviewed Relators Hartfield and McPhaul (Dkt. #117 at p. 23).

4. A relator also must comply with the other half of this original-source test: that it has "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions . . . ." 31 U.S.C. § 3730(e)(4)(B). However, the Court does not address that requirement here because Defendant does not dispute that Relators Franklin, Hartfield, and McPhaul meet this requirement. *See* (Dkt. #106 at pp. 28–32; Dkt. #117 at pp. 21–22).

8

### i. A Relator Who Disclosed New Claims of Fraud to the Government Prior to Filing an Amended Complaint May Qualify as an Original Source

The Court finds that a relator who provided information to the Government concerning new claims of fraudulent conduct before including those claims in an amended complaint may qualify as an original source based on the text of the original-source exception.

The draftsmanship of the FCA "has its quirks." *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 101 (3d Cir. 2000) (Alito, J.). As then-Judge Alito noted, one of those "quirks" is that the FCA is "based on the model of a single-claim complaint," despite the reality that most *qui tam* actions assert multiple claims of fraudulent conduct. *Id.* at 101–02 (citation omitted). The Third Circuit then gave several examples to "illustrate this pattern," and it reasoned that throughout the FCA, an "action" often refers to an individual claim within a multi-claim complaint. *See id.* at 102.

This FCA-specific analysis informs the Court's interpretation here. So, while the original-source exception requires a relator to have "voluntarily provided the information to the Government before filing an action," 31 U.S.C. § 3730(e)(4)(B), "action" is not to be rigidly interpreted as the filing of the original complaint. *See Merena*, 205 F.3d at 102 (discussing how, throughout the FCA, "action" properly refers to a single claim in a multi-claim complaint). Consistent with its accepted meaning within the FCA, "an action" under the original-source exception can refer to a single claim in a multi-claim complaint. Accordingly, a relator's original-source status is to be determined on a claim-by-claim basis. There is no cutoff at the filing of the original complaint as Defendant urges.

Defendant attempts to distinguish *Merena* in two ways: (1) by arguing that its reasoning is limited to the interpretation of the public-disclosure bar; and (2) by invoking the *expressio unius* canon to reason that, by adding the word "claim" to the public-disclosure bar but not to the original-

source exception in a 2010 amendment, Congress acted intentionally and purposely to exclude "action" from referring to a claim under the original-source exception (Dkt. #122 at p. 6). Defendant's strained interpretation of both *Merena* and the effect of the 2010 amendment is unpersuasive. Defendant is correct that *Merena* stated: "Thus, in applying section (e)(4) [the public-disclosure bar], it seems clear that each claim in a multi-claim complaint must be treated as if it stood alone." *Merena*, 205 F.3d at 102. However, Defendant reads this sentence to the exclusion of the rest of the analysis. The Third Circuit examined the FCA's structure, interpreted the meaning of "action" throughout the FCA, and then *applied* that interpretation to the public-disclosure bar. *Id.* at 101–02. It did not, as Defendant suggests, limit its interpretation to the public-disclosure bar.

Defendant's *expressio unius* argument is likewise unavailing. Defendant asserts that Congress added the word "claim" to the public-disclosure bar in its 2010 amendment to the FCA to "fix the problem that then-Judge Alito identified" in *Merena*, and that Congress's failure to similarly amend the relevant portion of the original-source exception represents an intentional and purposeful exclusion (Dkt. #122 at p.7). But as discussed above, the "problem" *Merena* identified is a statute-wide "quirk[]." *Id.* at 101–02 (identifying that the "*statute* is based on the model of a single-claim complaint." (emphasis added)). And as the Supreme Court recently discussed, the *expressio unius* canon can be overcome by context and "contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013). The entire structure of the FCA is an indication that the *expressio unius* canon does not apply as Defendant urges. *See Merena*, 205 F.3d at 102 (stating that, despite referring to "the action," there is no dispute that the FCA allows the government to take over only certain claims in a multi-claim action, dismiss only certain claims in a multi-claim action, and

settle only certain claims in a multi-claim action, and that "we are aware of no decision holding that this is improper.").[5]

In addition to its *expressio unius* argument, Defendant cites to *Rockwell*, *Duxbury*, *Ocwen*, and *Branch Consultants* to support its interpretation (Dkt. 106 at pp. 28–29) (citing *Rockwell Intern. Corp. v. United States*, 549 U.S. 457 (2007); *United States ex rel. Duxbury v. Ortho Biotech Products, L.P.*, 579 F.3d 13 (1st Cir. 2009); *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, 4:12-CV-461, 2016 WL 3031713 (E.D. Tex. May 25, 2016); *U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 782 F. Supp. 2d 248 (E.D. La. 2011)). These cases do not persuade the Court that Defendant's argument is correct.

Defendant asserts that in *Duxbury*, the First Circuit held that relators are "'required, in order to qualify as an 'original source,' to provide [their] information *prior to the filing of the Original Complaint*, rather than' subsequent amended complaints" (Dkt. #106 at p. 29) (emphasis and alterations in original) (quoting *Duxbury*, 579 F.3d at 28). This is not what the First Circuit held in *Duxbury*. The relevant portion of *Duxbury*—quoted in its entirety—states:

> As an initial matter, the Amended Complaint alleges that Relator McClellan *does not bring any new legal claims* against [OBP], but rather adds additional supporting facts to the legal claims previously made [in the Original Complaint]. *Thus*, the district court correctly concluded that McClellan was required, in order to qualify as an original source, to provide his information prior to the filing of the Original Complaint, *rather than* the Amended Complaint.

*Duxbury*, 579 F.3d at 28 (alterations in original) (emphasis added) (citations and quotations omitted). *Duxbury* holds that a relator does not qualify as an original source by providing his

---

[5] The upshot of Defendant's interpretation is untenable. Defendant attempts to cabin its *expressio unius* argument to the original-source exception. But if Congress's failure to amend the original-source exception was evidence of its exclusionary intent, its failure to amend the numerous, statute-wide references to an "action" should also be taken as evidence of exclusionary intent. Because the FCA clearly allows for claim-by-claim treatment despite repeated references to an "action," *Merena*, 205 F.3d at 102, taking Defendant's *expressio unius* argument to its logical conclusion would upend the proper application of the FCA. *See Tarrant Reg'l Water Dist. v. Herrmann*, 569 U.S. 614, 629–30 (2013) (declining to accept petitioner's *expressio unius* argument because doing so would produce anomalous results in other sections of the statute).

11

information prior to the filing of an amended complaint *when he does not bring any new claims against the defendant*, and instead, merely adds facts to the original complaint. *Id.* In fact, the relevant portion of *Duxbury* suggests that a relator brining new claims in an amended complaint could qualify as an original source if it disclosed the information to the Government prior to filing the amended complaint. *See id.*

The Court has previously found that *Duxbury* does not prevent a relator from qualifying as an original source for allegations added in an amended complaint, so long as the allegations are new. *Ocwen*, 2016 WL 3031713, at *7 n.7. Defendant is correct that this Court also stated in *Ocwen* that "the only requirement of the original source element relates to when the suit was filed, not when the public disclosure was made." *Id.* at *8. However, the Court made this statement in discussing whether a relator must disclose his or her information to the Government before the alleged fraud is publicly disclosed.[6] *See id.* But that is not the question here. The question is whether a relator may qualify as an original source for allegations disclosed to the Government after filing the original complaint—not whether a relator may qualify as an original source when he failed to disclose his information to the government before the alleged fraud was publicly disclosed. Thus, Defendant's use of *Ocwen* to support its argument is unpersuasive.

*Branch Consultants* lends the most support to Defendant's position, but it is distinguishable. In *Branch Consultants,* the relator filed an amended complaint, adding a new inflated-revenue claim. 782 F. Supp. 2d at 259. It also made two supplemental disclosures to the Government prior to filing its amended complaint but after filing its original complaint. *Id.* Importantly, in the version of the FCA addressed by the court in *Branch Consultants*, determining

---

6. Although the issue before the Court did not arise in *Ocwen*, it could have. In *Ocwen*, Relator Fisher filed the Original Complaint and the First Amended Complaint added Relator Brian Bullock. 2016 WL 3031713, at *1. However, in challenging the relators' original-source status, the defendants in *Ocwen* did not raise the argument raised here. *See id.* at *7 n.6.

whether a relator was an original source was a jurisdictional question. *Id.* at 258; *see also Rockwell*, 549 U.S. at 467–68 (holding that determination of original-source status was a jurisdictional determination). The relator argued that even if it was not an original source at the time it filed its complaint, it became an original source after making the supplemental disclosures to the Government. *Id.* Relator argued that the filing of its new claim and its supplemental disclosures "should influence the Court's jurisdictional analysis." *Id.*

The court's entire opinion—including its conclusion that the court could not consider relator's supplemental disclosures—was examined through the lens of the court's jurisdiction over relator's claims. *Id.* at 270. In its analysis, the court stated:

> In making its original source showing, [the relator] cannot rely on the two supplemental disclosures it made to the government after filing the original complaint but before filing the First Amended Complaint. Because the Court cannot acquire jurisdiction because of changed jurisdictional facts, as discussed *supra*, the Court must look to the disclosures Branch made before it filed suit.

*Id.* at 269–70 (footnote and citation omitted). This analysis, and the conclusion that the court could not consider the supplemental disclosures in addressing whether relator was an original source, turned on the jurisdictional "time-of-filing rule," which the court held applied clearly to the original-source determination. *Id.* at 260–61.

Since *Branch Consultants*, Congress has amended the FCA and removed the jurisdictional component to the public-disclosure bar and original-source analysis. *E.g.*, *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 387 n.2 (5th Cir. 2017). Because the original-source analysis no longer presents a question regarding jurisdictional facts, the analysis in *Branch Consultants*—and the conclusion drawn from that jurisdictional analysis—does not implicate the question here.

Finally, in *Rockwell*, the relator attempted to piggyback his original-source status with respect to his unsuccessful spray-irrigation-fraud claim onto his successful pondcrete-fraud claim.

13

549 U.S. at 466, 476. Although dealing with the version of the FCA where original-source status was a jurisdictional question, *id.* at 467–68, the Supreme Court noted that original-source status requires a claim-by-claim determination, citing then-Judge Alito's opinion in *Merena* favorably. *See id.* at 476 (citing *Merena*, 205 F.3d at 102). Nothing in *Rockwell* supports Defendant's argument before the Court today.

As demonstrated, none of Defendant's cited cases support its argument that to qualify as an original source, a relator must make its disclosures before filing the original complaint. In its search, the Court found limited on-point authority as well. In *McBride,* the relator sought to add three new relators pursuant to Federal Rule of Civil Procedure 15. *United States ex rel. McBride v. Halliburton Co.*, CIV.A.05 00828 HHK, 2007 WL 1954441, at *3 (D.D.C. July 5, 2007). The defendants challenged the relator by asserting the public-disclosure bar. *Id.* The court noted that its analysis must be conducted on a claim-by-claim basis: "Under *Rockwell*, then, the relevant question here is whether the new relators' claims would have been doomed by section (e)(4) if they had been asserted in a separate action." *Id.* (citing 549 U.S. at 473). The court held that the new relators were not original sources and could only qualify if they had "voluntarily provided the information to the Government before filing their *claims*." *Id.* at *4 (emphasis added) (citation and quotation omitted). Although not directly on point, and again dealing with the unique, jurisdictional considerations in the pre-2010 FCA, *McBride* implies that an original source is only required to disclose information to the Government before filing its claims, and not before filing the original complaint as Defendant argues.

In a similar case, a relator, Wilson, sought to add another relator, Allen, to the suit pursuant to Rule 15. *United States ex rel. Wilson v. Bristol Myers Squibb, Inc.*, 06CV12195-NG, 2011 WL 2462469, at *7 (D. Mass. June 16, 2011), *aff'd*, 750 F.3d 111 (1st Cir. 2014). Although Allen

14

claimed to be an original source, he did not disclose any information to the Government before the filing of the original complaint or the proposed amended complaint. *Id.* In its analysis, the court—citing *Duxbury*—stated without discussion that a "second relator cannot qualify as an original source if he did not provide his information to the government prior to the first relator's filing of the original complaint." *Id.* (citing *Duxbury*, 579 F.3d at 21). As the Court addressed above, *Duxbury* holds that a relator does not qualify as an original source by providing his information prior to the filing of an amended complaint *when he does not bring any new claims against the defendant*. *Duxbury*, 579 F.3d 13 at 28. *Wilson*'s citation to *Duxbury* for a different proposition, without explanation, is not instructive here.

As illustrated above, there is limited case law addressing this topic. And the case law directly implicating the interpretation of the original-source exception supports the Court's conclusion. Additionally, the Court finds persuasive Relators' argument that interpreting the FCA as Defendant suggests would have strange, practical effects: under Defendant's theory, a relator who amends his complaint to include another claim of fraud would not be an original source for that claim unless he disclosed that information prior to filing his *original complaint*; but that same relator *could* qualify as an original source if—rather than amend his complaint—the relator disclosed the new claim to the Government and filed a separate lawsuit (Dkt. #126 at p. 5).

The Court's conclusion is also consistent with the purpose of the original-source exception to the public-disclosure bar, which the Fifth Circuit has explained is to allow relators who discover fraud to "receive a reward for bringing *claims*." *Colquitt*, 858 F.3d at 373 (emphasis added). "Even when the facts are publicly disclosed, a relator who is an original source may still bring something of value to the table and thus deserves to benefit." *Id.* This principle holds true whether

the relator discloses the claims prior to filing the original complaint or prior to adding them in an amended complaint.

Having decided this threshold question, the remaining question is a narrow one: did Relators Franklin, Hartfield, and McPhaul allege *new* claims of fraudulent activity against Defendant in the amended complaint? Because the Court finds that Relators Franklin, Hartfield, and McPhaul did allege new claims, they are original sources for those claims.

### ii. Relators Franklin, Hartfield, and McPhaul Alleged New Claims

Defendant argues that even if a relator may qualify as an original source for new claims not disclosed until prior to filing an amended complaint, Relators Franklin, Hartfield, and McPhaul are not original sources because they "added allegations but maintained the same claim Fisher originally brought in 2013, namely, that Chase committed fraud by falsely certifying HAMP compliance" (Dkt. #122 at p. 8). Relators argue that under the FCA, a claim is simply a theory or type of fraudulent conduct (Dkt. #126 at p. 2). The Court agrees with Relators.

A "claim" under the FCA is a discrete theory of fraudulent conduct. *See, e.g.*, *Rockwell*, 549 U.S. at 466 ("The verdict form divided the False Claims Act count into several different claims corresponding to different award-fee periods."). And the FCA allows for recovery on "*all fraudulent attempts* to cause the government to pay out sums of money." *United States ex rel. Boothe v. Sun Healthcare Grp., Inc.*, 496 F.3d 1169, 1172 (10th Cir. 2007) (emphasis added) (Gorsuch, J.). Then-Judge Gorsuch explained in *Boothe* that although relator's complaint did not "formally denominate each of her ten claims of fraud as separate causes of action . . . each of the *ten fraudulent schemes* Ms. Boothe identifies *is tantamount to a discrete and independent cause of action for fraud*," and that "each of the separate frauds . . . must be analyzed on its own terms." *Id.* at 1177 (emphasis added). The Court agrees with this analysis and finds that a claim under the FCA is a discrete allegation of fraudulent conduct. *See Ocwen*, 2016 WL 3031713, at *7 n.7.

16

Relators Franklin, Hartfield, and McPhaul alleged new and discrete theories of fraudulent conduct against Defendant. Defendant concedes that they "added allegations," and the Court finds that Relators' allegations of fraudulent conduct are distinct from the ones alleged in the original complaint. For example:

- Relators Franklin and McPhaul worked in Defendant's Loss-Mitigation Department, where they observed its alleged dual-capitalization schemes and its practice of dual-tracking loans (Dkt. #117, Exhibit 3; Dkt. #117, Exhibit 5). Defendant does not show where those allegations of fraudulent conduct were previously disclosed by Relator Fisher in the original complaint.

- As a single point of contact for borrowers, Relator Hartfield heard stories of dual tracking and observed Defendant's alleged failure to adequately hire and trail underwriters (Dkt. #117 at p. 21–22; Dkt. #117, Exhibit 4). Defendant does not show where those allegations of fraudulent conduct were previously disclosed by Relator Fisher in the original complaint.

- Conversely, Relator Fisher assisted borrowers in their efforts to obtain loan modifications and observed that Defendant failed to adhere to HAMP modifications by failing to disclose "very large balloon payment[s] to borrowers." (Dkt. #17 at pp. 2–3; Dkt. #117 at p. 20).

All the above are distinct allegations of fraudulent conduct against Defendant. And since Relators informed the Government of these new allegations prior to filing the amended complaint, (Dkt. #117 at pp. 22–23), Relators are original sources.[7]

To be clear, if Relators Franklin, Hartfield, and McPhaul disclosed the same allegations of fraudulent conduct as Relator Fisher, the Court's decision would be different, as the former Relators could no longer qualify as original sources. But each Relator in this case has direct and independent knowledge of separate instances of alleged fraud that materially adds to the publicly disclosed allegations. In other words, each Relator brings direct and independent knowledge of

---

[7] Defendant does not dispute that Relators Franklin, Hartfield, and McPhaul also meet the other requirement for the original-source exception: that their "knowledge [] is independent of and materially adds to the publicly disclosed allegations or transactions . . . ." 31 U.S.C. § 3730(e)(4)(B); *see generally* (Dkt. #106 at pp. 28–32; Dkt. #117 at pp. 21–22).

17

separate and distinct HAMP-guideline violations committed by Defendant "to the table." Accordingly, Relators Franklin, Hartfield, and McPhaul qualify under the original-source exception and, if they prevail, should "receive a reward for bringing [their] claims." As a result of the above analysis, the Court denies Defendant's motion for summary judgment under the public-disclosure bar against Relators Franklin, Hartfield, and McPhaul.

### B. Relator Fisher Is an Original Source

Defendant next argues that Relator Fisher cannot be an original source (Dkt. #106 at pp. 30–36). Defendant first argues that Relator Fisher's role in the case has changed to the point that he is no longer an original source of the operative allegations: "[the] [Truth in Lending Act ("TILA")]-related information Fisher allegedly provided to the government before filing this suit is at best tangential to the fraud the operative Complaint alleges . . . ." (Dkt. #106 at pp. 30–31).

To an extent, Defendant is correct. As explained above, the new relators have alleged separate ways that Defendant failed to adhere to the HAMP guidelines. Accordingly, the allegations against Defendant have grown in the subsequent amended complaints. Even so, as Defendant admits, Relator Fisher disclosed to the Government Defendant's failure to comply with the TILA—one way which Relators claim Defendant failed to comply with the HAMP guidelines (Dkt. #115 ¶ 133). Accordingly, the Court finds that Relator Fisher provided the government with information material to the operative complaint.

Defendant next contends that Relator Fisher does not possess independent information that materially adds to the public disclosures. Defendant explains that Relator Fisher's "TILA allegations barely even add color to the claim that [Defendant] defrauded the government by filing false legal-compliance certifications—they are an afterthought that does not change the substance of the fraud alleged in any material way." (Dkt. #106 at p. 33). As stated in his declaration, Fisher

18

reviewed hundreds of loan modification contracts and saw how Defendant refused to adhere to the HAMP guidelines, including the failure to properly disclose large balloon payments to borrowers (Dkt. #117, Exhibit 2 ¶ 2–5). As noted by Relators and left un-refuted by Defendant, "[Defendant] does not identify a single public disclosure that revealed [Defendant's] willful concealment of massive balloon payments in violation of TILA and that deprived homeowners of an informed decision on their modification options." (Dkt. #117 at p. 22). Although Defendant may classify the hundreds of alleged TILA violations as "merely adding color to the claim that Defendant defrauded the government," the Court cannot see how a specific allegation that Defendant committed hundreds of fraudulent acts does not materially add to the publicly disclosed information.[8]

In its final argument, Defendant contends Relator Fisher is not a whistleblower with "independent" knowledge but is instead "a professional *qui tam* relator who filed nearly identical complaints against at least eight mortgage services." (Dkt. #106 at p. 34) (citing *Jamison*, 649 F.3d at 327). The Court has already addressed this argument against Relator Fisher in its decision in *Ocwen*. *See* 2016 WL 3031713, at *7. For the same reasons, the Court disagrees with Defendant, finds *Jamison* distinguishable, and believes that Relator Fisher has the requisite independent and direct knowledge of the alleged fraud to qualify as an original source.

## CONCLUSION

As discussed above, Relators in this case qualify under the original-source exception. Therefore, the Court does not need to address whether the public-disclosure bar applies. It is

---

8. Defendant cites *Basic Legal* to support its argument. (Dkt. #106 at p. 33) (citing *United States ex rel. Advocates for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*, 816 F.3d 428 (6th Cir. 2016)). The Court agrees that *Basic Legal* is distinguishable for the reasons stated by Relators in their response (Dkt. #117 at p. 22).

therefore **ORDERED** that Defendant's Motion for Summary Judgment Under the Public Disclosure Bar (Dkt. #106) is hereby **DENIED**.

**SIGNED this 9th day of September, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE