# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, § <br> MICHAEL J. FISHER, KEITH § <br> FRANKLIN, CHEZZA HARTFIELD, and § <br> REGINA MCPHAUL § <br>  § <br> v. § <br>  § <br> JPMORGAN CHASE BANK N.A. § | Civil Action No. 4:16-CV-00395 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant JP Morgan Chase Bank N.A.'s Motion for Clarification or Reconsideration of the Court's September 9, 2019 Order (Dkt. #151). Defendant seeks reconsideration of the Court's order denying Defendant's motion for summary judgment (Dkt. #148). Having considered the motion and the relevant pleadings, the Court finds that the motion should be denied.

### BACKGROUND

In 2008, the United States faced a housing crisis caused, in part, by mortgage fraud and predatory lending. The crisis caused home prices to plummet and foreclosures to skyrocket, leaving homeowners with negative equity in their homes. Distressed homeowners were unable to sell or refinance their homes to meet their mortgage obligations. In response to this crisis, the Government enacted the Emergency Economic Stabilization Act of 2008 ("EESA"). Fannie Mae entered a Financial Agency Agreement for a Homeownership Preservation under the EESA with the U.S. Department of Treasury ("Treasury"), whereby the Treasury authorized Fannie Mae to act as a financial agent of the United States for EESA programs.

The Home Affordable Modification Program ("HAMP"), administered by the Treasury Department, was a voluntary program under EESA designed to prevent avoidable foreclosures by providing homeowners with affordable mortgage-loan modifications and other alternatives to eligible buyers. HAMP's primary goal was to relieve the burden on homeowners by lowering their mortgage payments to 31% or less of their gross monthly income. Investors would receive payments and a guarantee that no modification would result in a mortgage worth less than the net-present value of the property. In return, mortgage servicers, in addition to their annual servicing fees, received HAMP incentive payments to complete the modifications. Each successful modification entitled the servicer from $1,200–2,000 depending on how long the mortgage was delinquent. From the program's start in 2009 through the second quarter of 2016, HAMP generated more than 1.6 million permanent modifications.

In 2009, Defendant—one of the country's largest mortgage servicers by volume—enrolled in HAMP. On July 31, 2009, Defendant expressly certified its compliance with HAMP guidelines and applicable federal laws in signing the initial Servicer Participation Agreement ("SPA"). The SPA names Defendant as the servicer and "Fannie Mae, solely as Financial Agent of the United States," as the administrator. The SPA also names Freddie Mac as a compliance agent. The parties signed a Financial Instrument on the same day, which details the representations, warranties, and covenants that Defendant is obligated to make in connection with its participation in HAMP. The Financial Instrument was fully incorporated into the SPA. On March 24, 2010, Defendant signed an Amended SPA. Defendant also signed annual certifications, a prerequisite to receiving HAMP payments.

Defendant expressly represented in the SPAs and annual certifications that: (1) it was in compliance with the terms and guidelines of HAMP; (2) it was in compliance with all applicable

laws and requirements; (3) it created and maintained an effective HAMP program and committed the resources needed to employ enough trained, experienced personnel with the tools and technology necessary to provide quality service to homeowners; and (4) it had adequately documented and monitored its compliance and immediately reported to the Government any credible evidence of material violations of these certifications.

On February 8, 2012, Defendant and the Department of Justice, Department of Housing and Urban Development, and 49 state attorneys general entered into a $25 billion settlement agreement to address allegations of loan-servicing deficiencies, including HAMP violations. The Government brought suit, and the parties submitted a consent order that United States District Judge Rosemary M. Collyer of the United States District Court for the District of Columbia entered in April 2012. The consent order released Defendant from liability arising out of "Covered Servicing Conduct," including HAMP participation and implementation, occurring on or before February 8, 2012.

On September 27, 2013, relator Michael J. Fisher filed a complaint against Defendant in the Southern District of New York on behalf of the United States, alleging multiple violations of the False Claims Act, 31 U.S.C. §§ 3729–3732 ("FCA"). On November 3, 2015, Keith Franklin, Reginald McPhaul, and Chezza Hartfield joined Michael J. Fisher as relators (collectively, "Relators"). On June 2, 2016, the Southern District of New York transferred the case to this Court.

On January 30, 2019, Relators filed their operative complaint—*Qui Tam* Plaintiffs/Relators' Sixth Amended Complaint (Dkt. #115)—alleging that after February 8, 2012, Defendant systematically violated HAMP guidelines and knowingly presented false or fraudulent claims to the Government in order to obtain more than $430 million in HAMP payments. On December 13, 2018, Defendant filed its Motion for Summary Judgment Under the Public

Disclosure Bar (Dkt. #106). Relators filed a response in opposition to Defendant's motion on February 6, 2019 (Dkt. #117). Defendant filed a reply in support of the motion on February 22, 2019, and Relators filed a sur-reply to the motion on March 8, 2019 (Dkt. #122; Dkt. #126).

On September 9, 2019, the Court issued a Memorandum Opinion and Order denying Defendant's Motion for Summary Judgment Under the Public Disclosure Bar (Dkt. #148). On October 10, 2019, Defendant filed its Motion for Clarification or Reconsideration of the Court's September 9, 2019 Order (Dkt. #151). In it, Defendant seeks reconsideration of the Court's order denying Defendant's motion for summary judgment under Federal Rule of Civil Procedure 59(e) (Dkt. #151 at p. 7). Relators filed their response on October 22, 2019 (Dkt. #154), and Defendant replied on October 31, 2019 (Dkt. #155).

**LEGAL STANDARD**

A motion seeking reconsideration may be brought under Federal Rule of Civil Procedure 54(b), 59(e), or 60(b) depending on the circumstances. "The Fifth Circuit recently explained that 'Rule 59(e) governs motions to alter or amend a final judgment,' while 'Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action.'" *Dolores Lozano v. Baylor Univ.*, No. 6:16-CV-403-RP, 2018 WL 3552351, at *1 (W.D. Tex. July 24, 2018) (quoting *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)). Further, "[i]nterlocutory orders, such as grants of partial summary judgment . . . are left within the plenary power of the court that rendered them to afford such relief from them as justice requires [pursuant to Rule 54(b)]." *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014) (quotation marks omitted) (quoting *Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985)) (citing *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 585, 862 (5th Cir. 1970)).

## ANALYSIS

Defendant boldly claims that reconsideration under Rule 59(e) is appropriate because the Court "grant[ed] non-movant Relators summary judgment *sua sponte*" (Dkt. #151 at p. 8). The Court did nothing of the sort.

As Defendant acknowledges, it "moved for summary judgment under the FCA's public disclosure bar, which requires dismissal of qui tam complaints that are based on public disclosures, *unless the qui tam relator shows that he or she was an 'original source.'*" (Dkt. #151 at p. 4) (emphasis added). The original-source issue was fully briefed by the parties and—based on the law, the record, and the summary-judgment evidence[1]—the Court found that Defendant's motion for summary judgment should be denied because Relators were original sources under the original-source exception to the public-disclosure bar (Dkt. #148 at pp. 7–19).

Defendant now argues that reconsideration is appropriate under Rule 59(e) so that it may "test Relators' claim to original source status in discovery, and then either renew its SJ Motion at the close of discovery [] or assert the public disclosure bar defense at trial" (Dkt. #151 at p. 7).

The Fifth Circuit has "held on several occasions . . . 'a denial of summary judgment is an interlocutory order, which the court may reconsider and reverse at any time before entering final judgment.'" *Carter v. Farmers Rice Milling Co.*, 33 F. App'x 704 (5th Cir. 2002) (quoting *Millar v. Houghton*, 115 F.3d 348, 350 (5th Cir. 1997)). Because the Court's denial of summary judgment

---

[1] Defendant complains that the "Court's decision reflects its misunderstanding that Chase had conceded [whether Relators possess knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions], which in fact Chase did not" (Dkt. #151 at p. 6). As Relators note and Defendant admits, Relators filed several uncontroverted affidavits discussing Relators' independent knowledge as relevant to the original-source exception (Dkt. #154 at p. 7; Dkt. #155 at p. 4). Had Defendant wished the Court to analyze this "important element of Relators' potential original source status" (Dkt. #151 at p. 6), Defendant should have filed a controverting affidavit. *See, e.g.*, *Bernhardt By & Through Bernhardt v. Richardson-Merrell, Inc.*, 892 F.2d 440, 445 (5th Cir. 1990) ("It fails to controvert Dr. Jackson's affidavit and therefore did not create a genuinely disputed fact issue on the timing of Mrs. Bernhardt's ingestion of Bendectin.").

on the public-disclosure bar is an interlocutory order that does not end this action, Rule 54(b) allows the Court to revise its decision at any time. *Austin*, 864 F.3d at 336.

So, Defendant is free to "test Relators' claim to original source status in discovery, and then [] renew its SJ Motion at the close of discovery" (Dkt. #151 at p. 7).[2] Nothing in the Court's order stops Defendant from filing a renewed motion for summary judgment or a Rule 54(b) motion for reconsideration. Accordingly, Defendant's request for reconsideration under Rule 59(e) is meritless.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Clarification or Reconsideration of the Court's September 9, 2019 Order (Dkt. #151) is hereby **DENIED**.

**SIGNED this 21st day of January, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[2] And as for any questions of fact that would be suitable to present to the jury, the Court's order denying Defendant's motion for summary judgment does not preclude Defendant from doing so.