# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, MICHAEL J. FISHER, KEITH FRANKLIN, CHEZZA HARTFIELD, and REGINA MCPHAUL <br><br> v. <br><br> JPMORGAN CHASE BANK N.A. | § § § § § § § § § <br><br> Civil Action No. 4:16-CV-00395 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant JPMorgan Chase's Motion to Compel the Production of Relators' Disclosure Statements (Dkt. #169). Having considered the motion and the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

In 2008, the United States faced a housing crisis caused, in part, by mortgage fraud and predatory lending. The crisis caused home prices to plummet and foreclosures to skyrocket, leaving homeowners with negative equity in their homes. Distressed homeowners were unable to sell or refinance their homes to meet their mortgage obligations. In response to this crisis, the Government enacted the Emergency Economic Stabilization Act of 2008 ("EESA"). Fannie Mae entered a Financial Agency Agreement for a Homeownership Preservation under the EESA with the U.S. Department of Treasury ("Treasury"), whereby the Treasury authorized Fannie Mae to act as a financial agent of the United States for EESA programs.

The Home Affordable Modification Program ("HAMP"), administered by the Treasury Department, was a voluntary program under EESA designed to prevent avoidable foreclosures by providing homeowners with affordable mortgage-loan modifications and other alternatives to

eligible buyers. HAMP's primary goal was to relieve the burden on homeowners by lowering their mortgage payments to 31% or less of their gross monthly income. Investors would receive payments and a guarantee that no modification would result in a mortgage worth less than the net-present value of the property. In return, mortgage servicers, in addition to their annual servicing fees, received HAMP incentive payments to complete the modifications. Each successful modification entitled the servicer from $1,200–2,000 depending on how long the mortgage was delinquent. From the program's start in 2009 through the second quarter of 2016, HAMP generated more than 1.6 million permanent modifications.

In 2009, Defendant—one of the country's largest mortgage servicers by volume—enrolled in HAMP. On July 31, 2009, Defendant expressly certified its compliance with HAMP guidelines and applicable federal laws in signing the initial Servicer Participation Agreement ("SPA"). The SPA names Defendant as the servicer and "Fannie Mae, solely as Financial Agent of the United States," as the administrator. The SPA also names Freddie Mac as a compliance agent. The parties signed a Financial Instrument on the same day, which details the representations, warranties, and covenants that Defendant is obligated to make in connection with its participation in HAMP. The Financial Instrument was fully incorporated into the SPA. On March 24, 2010, Defendant signed an Amended SPA. Defendant also signed annual certifications, a prerequisite to receiving HAMP payments.

Defendant expressly represented in the SPAs and annual certifications that: (1) it was in compliance with the terms and guidelines of HAMP; (2) it was in compliance with all applicable laws and requirements; (3) it created and maintained an effective HAMP program and committed the resources needed to employ enough trained, experienced personnel with the tools and technology necessary to provide quality service to homeowners; and (4) it had adequately

documented and monitored its compliance and immediately reported to the Government any credible evidence of material violations of these certifications.

On February 8, 2012, Defendant and the Department of Justice, Department of Housing and Urban Development, and 49 state attorneys general entered into a $25 billion settlement agreement to address allegations of loan-servicing deficiencies, including HAMP violations. The Government brought suit, and the parties submitted a consent order that United States District Judge Rosemary M. Collyer of the United States District Court for the District of Columbia entered in April 2012. The consent order released Defendant from liability arising out of "Covered Servicing Conduct," including HAMP participation and implementation, occurring on or before February 8, 2012.

On September 27, 2013, relator Michael J. Fisher filed a complaint against Defendant in the Southern District of New York on behalf of the United States, alleging multiple violations of the False Claims Act, 31 U.S.C. §§ 3729–3732 ("FCA"). On November 3, 2015, Keith Franklin, Reginald McPhaul, and Chezza Hartfield joined Michael J. Fisher as relators (collectively, "Relators"). On June 2, 2016, the case was transferred to this Court.

On December 13, 2018, Defendant moved for summary judgment under the FCA's public-disclosure bar. Defendant alleged Relators' Fifth Amended Complaint contained facts that were publicly disclosed and Relators also did not qualify as original sources (Dkt. #106 at pp. 1–6). Relators survived summary judgment because they qualified as original sources for purposes of the motion—but the Court noted Defendant was "free to test Relators' claim to original source status in discovery" and then renew its motion for summary judgment (Dkt. #162 at p. 6).

Defendant sought production of the disclosure statements that Relators provided to the Government. Relators did not provide the statements, claiming attorney-client privilege, work-

documented and monitored its compliance and immediately reported to the Government any credible evidence of material violations of these certifications.

On February 8, 2012, Defendant and the Department of Justice, Department of Housing and Urban Development, and 49 state attorneys general entered into a $25 billion settlement agreement to address allegations of loan-servicing deficiencies, including HAMP violations. The Government brought suit, and the parties submitted a consent order that United States District Judge Rosemary M. Collyer of the United States District Court for the District of Columbia entered in April 2012. The consent order released Defendant from liability arising out of "Covered Servicing Conduct," including HAMP participation and implementation, occurring on or before February 8, 2012.

On September 27, 2013, relator Michael J. Fisher filed a complaint against Defendant in the Southern District of New York on behalf of the United States, alleging multiple violations of the False Claims Act, 31 U.S.C. §§ 3729–3732 ("FCA"). On November 3, 2015, Keith Franklin, Reginald McPhaul, and Chezza Hartfield joined Michael J. Fisher as relators (collectively, "Relators"). On June 2, 2016, the case was transferred to this Court.

On December 13, 2018, Defendant moved for summary judgment under the FCA's public-disclosure bar. Defendant alleged Relators' Fifth Amended Complaint contained facts that were publicly disclosed and Relators also did not qualify as original sources (Dkt. #106 at pp. 1–6). Relators survived summary judgment because they qualified as original sources for purposes of the motion—but the Court noted Defendant was "free to test Relators' claim to original source status in discovery" and then renew its motion for summary judgment (Dkt. #162 at p. 6).

Defendant sought production of the disclosure statements that Relators provided to the Government. Relators did not provide the statements, claiming attorney-client privilege, work-

product privilege, and the common-interest doctrine protected the documents. On April 5, 2019, Defendant urged production of the statements again because the factual portions of the statements contained ordinary work product that Defendant had a substantial need for in discovery. The parties met on April 17, 2019 to discuss the statements' production, in which Defendant offered the Relators an opportunity to redact any opinion work product. Relators refused to do so in a letter dated on August 9, 2019 because they claimed the statements were privileged.

Defendant sent interrogatories to the Relators, but it claims their responses "broadly summarized the allegations" and "did not specify when Relators disclosed each allegation." (Dkt. #169 at pp. 5–6). Defendant also deposed Relators Franklin, McPhaul, and Fisher. Defendant alleges these depositions did not reveal the factual information inside the disclosure statements that it has a substantial need for. Defendant requested the Disclosure Statements again on December 20, 2019, but again Relators refused to produce them.

On March 5, 2020, the Court granted Defendant leave to file a motion to compel the production of the disclosure statements. Defendant then filed its Motion to Compel on March 10, 2020 (Dkt. #169). Relators filed their response on March 20, 2020 (Dkt. #174). Defendant filed its reply on April 3, 2020 (Dkt. #185), which Relators provided a sur-reply to on April 20, 2020 (Dkt. #192). The Government provided its Statement of Interest on April 27, 2020 (Dkt. #194). Defendant responded to the Government's statement on May 4, 2020 (Dkt. #196).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non[-]privileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1); *Crosby v. La.*

*Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "documents containing, information 'relevant to the claim or defense of any party.'" (Dkt. #113 at p. 4). Moreover, the Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense. . . ." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on

the basis of that objection." FED. R. CIV. P. 34(b)(2)(C).  On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest."  FED. R. CIV. P. 34(b)(2)(C).

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law.  FED. R. CIV. P. 26(g).  This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." FED. R. CIV. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery.  FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes.  FED. R. CIV. P. 26(b)(1), advisory committee note (2015).  This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue.  *Id.*  For example, a party requesting discovery may have little information about the burden or expense of responding.  *Id.*  "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination."  *Id.*

## ANALYSIS

Defendant is seeking production of the disclosure statements that Relators served on the Government pursuant to 31 U.S.C. § 3730(b)(2).  Relators allege the disclosure statements are protected by: (1) attorney-client privilege, (2) the work-product doctrine, and (3) the common-interest doctrine (Dkt. #174 at pp. 2–3).  Defendant first contends that even if any privilege did exist, Relators have waived it (Dkt. #169 at pp. 8–9).  Defendant also asserts that production of the factual portions of the disclosure statements is appropriate because the statements are not

protected by attorney-client privilege and it has substantial need for the ordinary work product within the statements (Dkt. #169 at pp. 9–14).

The FCA allows a private citizen to file a civil action on behalf of the person and Government. *See* 31 U.S.C. § 3730(b)(1). Before filing the complaint, however, the private citizen—known as a relator—must provide the Government with a written disclosure statement that contains "substantially all material evidence and information the person possesses." 31 U.S.C. § 3730(b)(2). Disclosure statements serve the purpose of "provid[ing] the United States with enough information on the alleged fraud to be able to make a well-reasoned decision on whether it should participate in the filed lawsuit or allow the relator to proceed alone." *United States ex rel. Fisher v. Homeward Residential, Inc.*, No. 4:12-CV-461, 2015 WL 4610284, at *2 (E.D. Tex. July 31, 2015) (quoting *United States ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 555 (C.D. Cal. 2003)).

The FCA itself is silent on whether disclosure statements are available to defendants for discovery. *See* U.S.C. § 3730(b)(2). So, courts follow the Federal Rules of Civil Procedure in determining whether the statements are discoverable. *E.g.*, *United States ex rel. Heesch v. Diagnostic Physicians Grp., P.C.,* No. CV 11-00364-KD-B, 2014 WL 12603138, at *2 (S.D. Ala. June 4, 2014); *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 231 F.R.D. 378, 381 (N.D. Ill. 2005). Courts acknowledge that disclosure statements are relevant to discovery under the Federal Rules, but courts are divided on what privileges may attach to them.

**I. Attorney-Client Privilege**

Defendant argues that attorney-client privilege does not apply because disclosure statements do not meet the requirements for attorney-client privilege (Dkt. #169 at p. 9). Specifically, Defendant asserts that disclosure statements are not made between an attorney and

client or submitted to the Government for legal advice (Dkt. #169 at p. 9). In cases dealing with a federal question, the requirements for attorney-client privilege are:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of a bar of a court, or his subordinate, and in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services (iii) or assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Ferko v. Nat'l Ass'n For Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 133–34 (E.D. Tex. 2003) (citing *United States v. Mobil Corp.*, 149 F.R.D. 533, 536 (N.D. Tex. 1993)).

Courts that have addressed the issue largely agree: disclosure statements do not qualify for attorney-client privilege. *See Homeward Residential*, 2015 WL 4610284, at *4 n.3 ("[R]eported decisions expressly addressing the issue have uniformly concluded that disclosure statements are not protected by the attorney-client privilege.") (collecting cases). But because the Court today holds that: (1) Relators' disclosure statements are at least ordinary work product; and (2) Defendant has not shown a substantial need for the privileged materials or an inability to obtain the substantial equivalent without undue hardship, the Court does not address Relators' argument that their disclosure statements are protected by the attorney-client privilege.

## II. Work-Product Doctrine

Relators argue that the disclosure statements are protected by the work-product doctrine (Dkt. #174 at p. 2). Rule 26 of the Federal Rules of Civil Procedure codifies the work-product doctrine and provides in part that:

> [A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But . . . those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial

8

>need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

FED. R. CIV. P. 26(b)(3)(A). Rule 26 further distinguishes between two types of work product—ordinary and opinion. *See id.*; *see also S.E.C. v. Brady*, 238 F.R.D. 429, 442 (N.D. Tex. 2006). While ordinary work product is comprised of "factual material prepared in anticipation of litigation or trial," opinion work product contains the "mental impressions, conclusions, or legal theories of any attorney or other representative of a party. . . ." *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC.*, No. 4:12-CV-543, 2015 WL 4609742, at *2 (E.D. Tex. July 31, 2015).

In order to claim work-product privilege, a party must show that: "(1) the materials sought are tangible things; (2) the materials sought were prepared in anticipation of litigation or trial; [and] (3) the materials were prepared by or for a party's representative." *Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-CV-565-TJW-CE, 2011 WL 1714304, at *2 (E.D. Tex. May 4, 2011)). Once a party meets this showing, the burden shifts to the party seeking discovery to prove why the materials should still be produced. *Ocwen*, 2015 WL 4609742, at *3 (quoting *Ferko v. Nat'l Ass'n For Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 400 (E.D. Tex. 2003)). Specifically, the party seeking discovery "must establish (1) a substantial need of the privileged materials and (2) an inability to obtain the substantial equivalent of the material through other means without undue hardship." *Id.* (quoting *Ferko*, 219 F.R.D. at 400). However, opinion work product "enjoys nearly absolute protection" and is only discoverable in rare circumstances or when the work-product privilege has been waived. *Id.* (citing *Bagley*, 212 F.R.D. at 559).

Defendant argues that the factual portions of the disclosure statements are ordinary work product that Defendant has a substantial need for and cannot otherwise acquire without undue hardship (Dkt. # 169 at pp. 10–14).[1] On the other hand, Relators (and the Government) ask the

---

[1] Defendant concedes that opinion work product within the disclosure statements can be redacted.

9

Court to adopt a bright-line rule that disclosure statements are entirely opinion work product (Dkt. #174 at pp. 3–5, Dkt. #194 at pp. 2–4). Thus, Relators claim they should not be forced to produce the documents because they have not waived work-product privilege and no rare circumstances are present. Relators argue alternatively that if the Court finds that the disclosure statements are ordinary work product, Relators should still not be forced to produce them because Defendant cannot demonstrate a substantial need for the factual portions of the statements (Dkt. #174 at pp. 5–11).

"The Fifth Circuit has not directly addressed whether FCA disclosure statements constitute opinion work product or ordinary work product." *Homeward Residential*, 2015 WL 4610284, at *3; *Ocwen*, 2015 WL 4609742, at *3. In the past, the Court held that disclosure statements filed pursuant to the FCA "constitute *at least* ordinary work product for the purposes of the work-product doctrine." *Homeward Residential*, 2015 WL 4610284, at *3 (emphasis added); *Ocwen*, 2015 WL 4609742, at *3 (emphasis added). And the Court need not resolve this open question today—even assuming FCA disclosure statements constitute only ordinary work product, the Court finds that Defendant has not met its burden of showing substantial need for the disclosure statements.

Defendant argues it establishes substantial need for the disclosure statements' factual portions because it needs them in order to: (1) test Relators' original-source status; and (2) challenge the materiality of Relators' allegations (Dkt. #169 at pp. 11–13). Furthermore, Defendant contends that Relators have impeded its attempts to acquire similar information (Dkt. #169 at pp. 13–14). The Court disagrees. Because the Court finds the disclosure statements to be at least ordinary work product, and Defendant has not demonstrated a substantial need for the statements, the Court will not compel Relators to produce the disclosure statements at this time.

### A. Defendant's Original-Source Argument

Under the FCA, a relator may not bring a claim if "substantially the same allegations or transactions in the action or claim were publicly disclosed" prior to the relator bringing the claim. 31 U.S.C. § 3730(e)(4)(a). This is often referred to as the "public-disclosure bar." *See United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 373 (5th Cir. 2017). However, a relator can still successfully bring a claim despite the public-disclosure bar if the relator qualifies as an "original source" under the statute. 31 U.S.C. § 3730(e)(4)(a). An original source is:

> an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge *that is independent of and materially adds to the publicly disclosed allegations or transactions*, and who has voluntarily provided the information to the Government *before filing an action under this section*.

§ 3730(e)(4)(b) (emphasis added).

At summary judgment, Relators argued they qualified as original sources (Dkt. #117 at pp. 14–20). Defendant argues that in order to sufficiently challenge this assertion, it needs the disclosure statements to know what information Relators provided to the Government and when they disclosed it (Dkt. #169 at pp. 12–13). Some courts have acknowledged that invocation of original-source status can establish a substantial need for compelling the production of a relator's disclosure statement. *See United States ex rel. Branch Consultants, LLC v. Allstate Ins. Co.*, No. CV 06-4091-SSV-SS, 2010 WL 11627441, at *4 (E.D. La. May 12, 2010); *see also United States ex rel. Cericola v. Ben Franklin Bank*, No. 99 C 6311, 2003 WL 22071484, at *3 (N.D. Ill. Sept. 4, 2003).

But the situation here is distinguishable. Relators have provided Defendant with sufficient information that obviates any substantial need for the factual information on the original-source exception. As Relators note in their reply, they have provided Defendant with: (1) the documents

11

they provided to the Government; (2) names of other witnesses they spoke with during the investigations; and (3) the dates, times, and frequency of their meetings with the federal government. *See* (Dkt. #174 at p.10; Dkt. #174, Exhibits 1–4).

Also, Relators have been forthcoming in responding to Defendant's discovery requests through interrogatories and depositions. For example, Relator Fisher provided a detailed factual summary in his interrogatory response regarding how he observed Defendant's alleged violations and what conduct he reported to the United States (Dkt. #174, Exhibit 1 at p. 5). Relator Fisher also provided the dates he worked at the law firm where he witnessed the alleged violations— giving Defendant further means to verify what Fisher knew at the time of filing the action (Dkt. #174, Exhibit 1 at p. 5). Similarly, Relator Franklin provided a detailed factual summary in his interrogatory about what he witnessed, that he reported "these issues to the United States through my attorneys in August 2014," and the names of individuals who Defendant could question regarding Relator Franklin's knowledge at the time of the allegations (Dkt. #174, Exhibit 2 at pp. 6–14). Relators McPhaul and Hartfield also provided detailed factual summaries in their interrogatories as to their specific allegations, the names of other individuals who they informed about the alleged issues, and when they met with the Government (Dkt. #174, Exhibit 3 at pp. 4–11; Dkt. #174, Exhibit 4 at pp. 4–11).

Relators' depositions also provided Defendant with substantial information. For example, Relators McPhaul and Hartfield answered numerous questions regarding the documents they gave the Government and how those documents supported the allegations they made against Defendant (Dkt. #174, Exhibits 6–7). Relator Fisher provided when he met with the Government, who he met with, and the general subject matters of their discussions (Dkt. # 174, Exhibit 5). And Relator Franklin answered questions on the violations he alleged to the Government and what the

Government wanted to generally discuss in meetings (Dkt. #174, Exhibit 8).

Relators have provided Defendant with specific factual information and other means to allow Defendant to adequately test their original-source status. Defendant does not meet its burden of showing how the interrogatory responses, deposition answers, and other provided documents are insufficient. Nor can Defendant argue that Relators have refused to cooperate, making production of the disclosure statements Defendant's only opportunity to obtain factual information related to Relators' original-source status. Indeed, Relators have provided the facts and sources of information necessary for Defendant to challenge Relators on what they knew prior to filing their complaints. Therefore, Defendant fails to establish a substantial need for the information and an inability to acquire the information through other means.[2]

Defendant's remaining argument boils down to its contention that it still doesn't know when Relators filed their disclosure statements with the Government (Dkt. #169 at p. 13). So, the argument goes, Defendant cannot adequately test whether Relators violated their statutory duty to file the disclosure statement with the Government prior to bringing their claim. *See* 31 U.S.C. § 3730(b)(2). But this argument is unpersuasive. Defendant cannot rely on an "uncertain legal argument regarding potential procedural short comings" in order to demonstrate a substantial need. *United States ex rel. Carter v. Halliburton*, 266 F.R.D. 130, 134 (E.D. Va. 2010). As the *Carter* court noted, if a defendant could establish a substantial need this way, "such a statement would never be protected from production by the work product doctrine." *Id.* Defendant cannot simply rely on its desire to verify the § 3730(b)(2) procedural requirements for filing the disclosure

---

[2] The Court also notes that Defendant still has a year before trial begins. To the extent Defendant needs more factual information about what Realtors informed the Government about prior to filing their complaints, Defendant can still utilize discovery. *See Ocwen*, 2015 WL 4609742, at *4 ("Additionally, Ocwen has the opportunity to question Relators regarding the information contained within their allegations and their investigative efforts."); *see also United States ex rel. Hunt v. Merck-Medco Managed Care, LLC*, No. 00-CV-737, 2004 WL 868271, at *2 (E.D. Pa. Apr. 21, 2004) (holding defendants did not have substantial need for disclosure statements because defendants had ample opportunity to discover more facts before trial began).

statement with the Government in order to show substantial need.

### B. Defendant's Materiality Argument

Defendant alternatively argues it has a substantial need for the disclosure statements because if Relators disclosed specific allegations in their disclosure statements—and the Government continued to make payments—then this would be strong evidence that the Government did not consider Defendant's violations to be material (Dkt. #169 at pp. 11–12). The Court is unpersuaded.

In *Universal Health Servs., Inc. v. United States ex rel. Escobar*, the Supreme Court held that "compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." 136 S. Ct. 1989, 1996 (2016). The Supreme Court defined materiality as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id.* at 2002. In *Escobar*, the Court emphasized that the materiality standard is "demanding" and considered several relevant factors. *Id.* at 2003–04. Particularly relevant here, the Supreme Court noted that "if the Government pays a particular claim in full despite its *actual knowledge* that certain requirements were violated, that is very strong *evidence* that those requirements are not material." *Id.* at 2003 (emphasis added). Twice, the Supreme Court specifically referenced the Government's actual knowledge as relevant—but not dispositive—to materiality. *Id.* at 2003–04.

In advancing its argument on materiality, Defendant relies primarily on a strained reading of the Fifth Circuit's decision in *United States ex rel. Harman v. Trinity Industries Inc.*, 872 F.3d 645 (5th Cir. 2017), which addressed the materiality test—though as Relators note, not in the context of discovery. In *Trinity Industries*, the Fifth Circuit considered several other courts' decisions and determined that "though not dispositive, continued payment by the federal government after it learns of the alleged fraud substantially increases the burden on the relator in

14

establishing materiality." *Id.* at 663. Defendant attempts to take the Fifth Circuit's language—specifically that the Fifth Circuit referenced an "alleged fraud"—as importing a materiality standard that would make mere awareness of the allegations relevant to the materiality test. Thus, Defendant argues it has a substantial need for the statements because they may help demonstrate the scope of the Government's knowledge of the fraud when the Government authorized payments. But the Court disagrees.

First, as the Government and Relators correctly state, the Fifth Circuit's decision could not and did not alter the materiality standard set out by the Supreme Court in *Escobar*. It is the Government's actual knowledge of the fraud—not mere awareness of it—that is particularly relevant to the Government's payment decisions. *See Escobar*, 136 S. Ct. at 2002. The Fifth Circuit's decision did not depart from *Escobar* as Defendant claims. *See Trinity Indus.*, 872 F. 3d at 661 ("Unlike in the case we decide today, the [First Circuit] found no evidence that the relevant government agency had *actual knowledge* of any violations when it decided to pay the claims.") (emphasis added) (citing *United States ex rel. Escobar v. Universal Health Servs., Inc.,* 842 F.3d 103, 110 (1st Cir. 2016)).

The First Circuit's decision in *Escobar* following remand from the Supreme Court is particularly on point here. *Escobar*, 842 F.3d at 110–12. In addressing materiality, the First Circuit held that "mere awareness of allegations concerning noncompliance with regulations is different from knowledge of actual noncompliance." *Id.* at 112. While the disclosure statements here may contain material information to an *allegation* of fraud under the FCA, Relators and the Government rightfully point out that the statements likely do not carry the depth of information which would impart *actual knowledge* on the Government. *See Bagley*, 212 F.R.D. at 564 ("Contrary to defendant's assertion, the statutory requirement that relators disclose 'substantially

15

all material evidence and information' does not mean that disclosure statements are 'kitchen sink" documents that indiscriminately catalogue the universe of facts known to the relator. . . .").[3] Nor has Defendant satisfied their burden and shown precisely how the disclosure statements are the best and only way to determine whether the Government had actual knowledge (Dkt. #174 at p. 8).

Defendant cites the First Circuit's decision in *D'Agostino* for the proposition that awareness of the allegations is particularly relevant to the Government's payment decision. *See D'Agostino v. ev3, Inc.*, 845 F.3d 1, 7 (1st Cir. 2016) ("The fact that [the Government] has not denied reimbursement . . . in the wake of [the relator's] allegations casts serious doubt on the materiality of the fraudulent representations that [the realtor] alleges."). But again Defendant misses the mark. The First Circuit never held in *D'Agostino* that a realtor's disclosure statements always provide substantial evidence of the Government's actual knowledge relevant to the materiality determination. And it cannot be the case that—without an appropriate substantial-need showing—any dispute regarding materiality requires discovery of a relator's disclosure statement. Yet this is effectively what Defendant asks the Court to hold (Dkt. #185 at pp. 3–4). It will not.

The Court also notes the exceptional facts in *Trinity Industries*, the case Defendant heavily relies on. *See* 872 F.3d at 663. After thoroughly investigating the alleged misconduct, the Government released a report which found that the defendant's conduct was immaterial and complied with its federal standards. *Id.* at 650. Defendant has not established that it has a substantial need to examine the contents in the disclosure statements—which are at least ordinary work product—in order to uncover analogous evidence of actual knowledge or continuous approval for its materiality argument. As explained, the Court is unconvinced that such

---

[3] And even if it did, the Court notes that the Government's actual knowledge would merely be strong evidence—it would not be dispositive to the materiality determination.

information provides the Defendant with a substantial need for the disclosure statements' factual portions.

## III. Waiver

Defendant argues both that Relators waived any applicable privilege over their disclosure statements and that the common-interest doctrine cannot independently protect the statements from production (Dkt. #169 at pp. 8–9). Defendant's first argument is incorrect. And though its second argument is a correct statement of the law, because Relators have shown that the disclosure statements are at least ordinary work product, the common-interest doctrine operates to preclude any argument that Relators waived this privilege by providing their disclosure statements to the Government.

### A. Relators Did Not Waive Privilege by Opposing Summary Judgment

Defendant argues that Relators waived any claim of privilege by using the disclosure statements as a "sword" to defeat summary judgment. The Court disagrees.

Defendant stretches to say that Relators used the disclosure statements as a sword. It was actually Defendant who placed the disclosure statements "at issue" by moving for summary judgment on the public-disclosure bar. *C.f. Benevis, LLC V. Mauze & Bagby, PLLC*, No. 5:12-CV-36, 2015 WL 12763537, at *17 (S.D. Tex. Dec. 14, 2015) (holding Defendant placed pre-advertising state of mind "at issue" by referencing certain privileged documents). Moreover, the Court is unconvinced that Relators have selectively presented the contents of the documents like Defendant alleges, thus waiving any and all applicable privilege (Dkt. #169 at pp. 8–9). Relators did not rely on the disclosure statements themselves to advance their original-source argument. Instead, they argued that their knowledge and independent observations of alleged violations—which they had *before* ever filing the disclosure statements—qualified them as original sources.

Defendant apparently argues that because Relators subsequently placed this information in the disclosure statements, Relators turned the disclosure statements into a sword. The Court disagrees.

Additionally, the Government and Relators rightfully note that relators should not be discouraged from providing detailed and comprehensive disclosure statements to the Government. Accepting Defendant's waiver argument would do just that. In *Ocwen*, the Court remarked that "[p]ublic policy favors the full and frank communication between Relators and the Government concerning the prosecution of the case, and as such, the communications must be protected from disclosure." *Ocwen*, 2015 WL 4609742 at *3. Other courts agree. *See, e.g.*, *United States ex rel. Univ. Loft Co. v. AGS Enters., Inc.*, No. SA-14-CA-528-OLG, 2016 WL 9462335, at *7 (W.D. Tex. June 29, 2016) (quoting *Ocwen*, 2015 WL 4609742 at *3); *United States ex rel. Law Project for Psychiatric Rights v. Matsutani*, No. 3:09-CV-0080-TMB, 2010 WL 11515341, at *4 (D. Alaska Sept. 14, 2010) ("[R]elators should be encouraged to prepare 'thorough and helpful disclosure statements' to allow the Government to make sound intervention decisions."); *Bagley*, 212 F.R.D. at 565 ("[C]lassifying disclosure statements as opinion work product…encourages relators to include everything that might help the government in evaluating the case. . . .").

Were the Court to agree with Defendant and find waiver under these circumstances, a defendant would be encouraged to seek summary judgment on the public-disclosure bar, and then—so long as a relator argued that the original-source exception applied—would immediately gain access to the *entire* disclosure statement in discovery, whether it be ordinary work product or opinion work product. The Court does not believe Defendant employed that strategy here, but ruling that Relators' waived any privilege by claiming original-source status to defeat summary judgment would nonetheless allow for this style of gamesmanship moving forward. The Court

18

concludes that Relators have not waived privilege by referencing the disclosure statements when opposing Defendant's motion for summary judgment on the public-disclosure bar.[4]

### B. Common-Interest Doctrine

"Despite its name, the common interest privilege is neither common nor a privilege. Instead, it is an extension of the attorney-client privilege and of the work-product doctrine." *Ferko*, 219 F.R.D. at 401. While Defendant is correct that the common-interest doctrine itself cannot provide an independent basis for protecting Relators' disclosure statements, many courts—including this one—have held that relators do not waive any pre-existing privilege by filing their disclosure statements with the Government. *Ocwen*, 2015 WL 4609742, at *3; *United States ex rel. Purcell v. MWI Corp.*, 209 F.R.D. 21, 26–27 (D.D.C. 2002); *United States v. Medica-Rents Co.*, No. CIV.A. 4:00-CV-483-Y, 2002 WL 1483085, at *2 (N.D. Tex. June 21, 2002). So too here. Relators did not waive work-product protection by providing their disclosure statements to the Government.

### CONCLUSION

It is therefore **ORDERED** that Defendant JPMorgan Chase's Motion to Compel the Production of Relators' Disclosure Statements (Dkt. #169) is hereby **DENIED**.

---

[4] Defendant also argues that Relators waived privilege because they did not respond to two of its arguments in Relators' initial response (Dkt. #185 at pp. 1–2). Specifically, Defendant claims that Relators did not respond to Defendant's original-source argument or to Defendant's argument that Relators used the statements as a sword. First, the Court is unconvinced Relators failed to respond to Defendant's original-source argument because Relators emphasized in their response that the information they provided in interrogatories, depositions, and other materials obviated any substantial need Defendant had. Second, Defendant provides no case law for its assertion that a party can entirely waive work-product protection because it failed to respond to a specific argument—despite generally claiming privilege on similar grounds.

The Court also notes the importance of work product to the adversarial system. *See Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947); *see also S. Ry. Co. v. Lanham*, 403 F.2d 119, 126 (5th Cir. 1968) ("The work product exception is based on the public policy of preserving the independence of lawyers through the avoidance of unwarranted intrusion into their private files and mental processes."). And as stated above, disclosure statements deserve protection in order to encourage full communication between the Government and realtors. To find that Relators waived privilege by not addressing a certain sub-argument—despite Relators claiming work-product protection on other grounds—values form over substance and is contrary to the policy of generally protecting work product.

**SIGNED this 17th day of June, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE